## Case No. 4,131.

### In re DUNCAN et al.

[8 Ben. 365;[1] 14 N. B. R. 18.]

District Court, S. D. New York. Feb. 1876.

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

Field & Deyo, Abbott & Wilds, **D. D. Lord** and E. L. Andrews, for applicants.

F. N. Bangs, J. H. Choate, and Carter & Eaton, in opposition.

BLATCHFORD, District Judge. In this case, on the 18th of December, 1875, a petition in involuntary bankruptcy was presented to and filed in this court, praying that William Butler Duncan, William Watts Sherman and Francis H. Grain, copartners under the firm name of Duncan, Sherman & Co., be adjudged bankrupts. The petition purported to be the petition of 205 creditors. It set forth the claims of those creditors, and was signed by them. It was properly verified. It averred that the debtors resided in the city of New York, and had carried on business in this district for more than six months next preceding the date of filing the petition; that the demands of the petitioners were provable in accordance with the provisions of the Revised Statutes and the several amendments thereof; that the petitioners believed that the debtors, as such copartners, owed debts to an amount exceeding the sum of $300; that the petitioners' demands each exceeded the amount of $250; that the petitioners constituted one-fourth at least in number of all the creditors of the debtors, as such copartners, whose debts exceeded $250; and that the aggregate of the petitioners' debts provable under the said Revised Statutes, and the said several amendments thereof, amounted to at least one-third of all the debts so provable against said debtors, as such copartners. It averred properly acts of bankruptcy, and was accompanied by depositions as to such acts, and by depositions as to the claims of the first five signers of the petition. It was also accompanied by a paper signed and acknowledged by the three debtors, in which they stated that, "upon the filing of the petition," they "severally appear in person and admit that the requisite number and amount of their creditors have petitioned for an adjudication of bankruptcy against them herein; and waive service of a copy of the petition and of the order to show cause herein, and admit that they committed the acts of bankruptcy alleged in said petition and consent to the entry of said order of adjudication." It was further accompanied by an affidavit made by Walter S. Carter, one of the attorneys for the petitioning creditors, setting forth, "that he has examined the statement of debts of said alleged bankrupts, and that the total number of creditors of said alleged bankrupts whose claims exceed $250 does not exceed 786, and that the aggregate of all the debts of said alleged bankrupts, provable under the Revised Statutes of the United States, title 61, 'Bankruptcy,' and the several amendments and supplements thereof, does not exceed the amount of $5,400,000; that the number of creditors whose debts exceed the amount of

$250, uniting in the petition herein, is 205, the aggregate of whose debts provable under said Revised Statutes, and said several amendments and supplements thereof, amounts to $2,168,142.49." On the presentation and filing of these papers, the court made an order, on the 8th of December, 1875, in these words: "Upon reading and filing the foregoing admission, also the affidavit of Walter S. Carter, and the court being satisfied that said admission was made in good faith, it is hereby adjudged, that the requisite number and amount of the creditors of the said William Butler Duncan, William Watts Sherman and Francis H. Grain, copartners under the firm name of Duncan, Sherman & Co., have petitioned for an adjudication of bankruptcy against them, in the above-entitled matter, and that the same proceed without further steps on that subject." Thereupon, on the same day, on the foregoing appearance in person and consent of the debtors, an order of adjudication in bankruptcy, in due form, was entered and filed.

Certain creditors of the bankrupts, six in number, had, prior to the filing of the petition in bankruptcy, obtained judgments against them, as copartners, in a court of the state, and three of those six had, prior to the filing of such petition, brought what are known as creditors' suits, in a court of the state, founded on such judgments, to reach assets alleged to have been transferred by the debtors in fraud of creditors. One other of the six had, prior to the filing of the petition in bankruptcy, made a levy under an execution issued on his judgment, on property alleged by him to be liable to such levy. Seven other creditors have recovered judgments against the debtors, as copartners, in a court of the state, since the petition in bankruptcy was filed. On the 24th of December, 1875, this court, on the petition of the bankrupts, made an order staying the suits brought by the said thirteen creditors until the question of the discharge of the debtors shall have been determined, and staying the issuing of execution on the judgments, and further proceedings on executions issued. The creditors so stayed now present a petition to the court, praying that the adjudication of bankruptcy, and all the proceedings thereunder, be adjudged void and revoked.

One ground urged for setting aside the adjudication is, that the petition for adjudication, and the papers which accompanied it, do not show that the petition is the petition of creditors to one-third of the amount of the debts, but show that it is not the petition of creditors to one-third of the amount of the debts. Another ground urged is, that it may now be shown, by evidence aliunde the papers which were before the court when the adjudication was made, that one-third in amount of the creditors did not unite in the petition, and that such fact has been shown.

The 12th section of the act of June 22, 1874

(18 Stat. 180), in amendment of the 39th section of the act of March 2, 1867 (13 Stat. 536), provides that any person residing within the jurisdiction of the United States, and owing provable debts exceeding the amount of $300, who shall commit any one of certain specified acts, "shall be deemed to have committed an act of bankruptcy, and, subject to the conditions hereinafter prescribed, shall be adjudged a bankrupt on the petition of one or more of his creditors, who shall constitute one-fourth thereof, at least, in number, and the aggregate of whose debts provable under this act amounts to at least one-third of the debts so provable;" and that "the court shall, if such allegation as to the number or amount of petitioning creditors be denied by the debtor, by a statement in writing to that effect, require him to file in court forthwith a full list of creditors, with their places of residence and the sums due them respectively, and shall ascertain, upon reasonable notice to the creditors, whether one-fourth in number and one-third in amount thereof, as aforesaid, have petitioned that the debtor be adjudged a bankrupt." The section then proceeds: "But if such debtor shall, on the filing of the petition, admit in writing that the requisite number and amount of creditors have petitioned, the court, if satisfied that the admission was made in good faith, shall so adjudge, which judgment shall be final, and the matter proceed without further steps on that subject. And if it shall appear that such number and amount have not so petitioned, the court shall grant reasonable time, not exceeding, in cases heretofore commenced, twenty days, and, in cases hereafter commenced, ten days, within which other creditors may join in such petition. And if, at the expiration of such time so limited, the number and amount shall comply with the requirements of this section, the matter of bankruptcy may proceed; but if, at the expiration of such limited time, such number and amount shall not answer the requirements of this section, the proceedings shall be dismissed, and, in cases hereafter commenced, with costs." The 13th section of the act of 1874, in amendment of the 40th section of the act of 1867 [14 Stat. 517], provides as follows: "And if, on the return day of the order to show cause as aforesaid, the court shall be satisfied that the requirement of section thirty-nine of said act, as to the number and amount of petitioning creditors, has been complied with, or if, within the time provided for in section thirty-nine of this act, creditors sufficient in number and amount shall sign such petition so as to make a total of one-fourth in number of the creditors and one-third in the amount of the provable debts against the bankrupt, as provided in said section, the court shall so adjudge, which judgment shall be final; otherwise, it shall dismiss the proceedings, and, in cases hereafter commenced, with costs."

A careful examination of these provisions shows that congress intended that certain prescribed steps shall be taken to ascertain whether the petition presented is the petition of one or more creditors who constitute one-fourth, at least, of the creditors, in number, and whether the aggregate of the debts of the petitioning creditors provable under the act amounts to at least one-third of the debts so provable. In the first place, the petition must allege that fact. That fact is alleged in the petition in this case. If such allegation is denied by the debtor, either as to number or amount, in writing, the court is required to ascertain, on notice to the creditors, whether one-fourth in number and one-third in amount, as aforesaid, have petitioned. If they have not, time is to be given for others to join. If the required number join, the matter is to proceed. If not, the proceedings are to be dismissed. If, on the return day of the order to show cause, the court is satisfied that the requirement of the act as to the number and amount of the petitioning creditors has been complied with, or if, within the time allowed, creditors sufficient in number and amount sign the petition, to answer such requirement, the court is required to "so adjudge," and it is declared that such "judgment shall be final." The foregoing provisions cover the cases where the debtor appears and denies the allegation in question, and the cases where he appears and makes no denial of it, and the cases where he does not appear at all, but makes default. But there remains another class of cases. The foregoing three classes are cases of action on the return day of the order to show cause. The remaining class comprises cases where the debtor, on the filing of the petition, and without awaiting the issuing and service of an order to show cause, admits in writing that the requisite number and amount of creditors have petitioned. If he does, the court, if satisfied that the admission is made in good faith, is required to "so adjudge," and it is declared that such "judgment shall be final," and that the matter shall "proceed without further steps on that subject." It was under this latter provision that the proceedings in this case were taken. The debtor is clearly invited by the statute to make such admission, if the admission can be made in good faith, and he is invited to do so on the filing of the petition, and before the order to show cause is issued or can be served, and when he can be advised of the existence of the petition only by information communicated to him otherwise than in the due course of a legal proceeding. If, on the making of the admission, the court is satisfied that the admission is made in good faith, the court is required to "so adjudge," that is, to adjudge "that the requisite number and amount of creditors have petitioned;" and it is enacted that such judgment shall be final, and that the matter shall proceed without further steps on that subject. The requirement in regard to so ad-

judging is the same in respect to the three classes of cases of action on the return day of the order to show cause, and the finality of the judgment is declared in the same terms. The admission in this case and the judgment thereon were in due form. No question is raised on that subject. What, then, is the effect of the statute? The court is authorized to find a fact, to be satisfied of the existence of a fact, by evidence placed before it, either a sworn allegation in the petition, not denied by the debtor on the return of the order to show cause, or evidence that added creditors, coming in after a denial by the debtor on such return, make up the requisite number and amount, or an admission by the debtor made in writing on the filing of the petition, if the court be satisfied that such admission is made in good faith. If the court finds such fact, it is to adjudge that the fact exists, and that judgment is declared to be final, and it is enacted that the matter in bankruptcy shall proceed without further steps on that subject. These provisions are significant and indicate that some effective meaning must be attached to the word "final." It is to be the end of all inquiry on the point as to whether the required number and amount of creditors have petitioned. There are to be no further steps on that subject. If the debtor denies the allegation, on the return of the order to show cause, and files a list of his creditors, and the court, on notice to the creditors and on evidence obtained by an investigation, determines that the required number and amount of creditors have not petitioned, and then allows time for others to join, and they do join and sign the petition, and then the court determines and adjudges that, with those so joining, the required number have petitioned, that judgment is to be final, and it is not to be permitted either to the debtor or to any creditor thereafter to come in and show that the court erred, and that the fact was otherwise. So, of a like judgment on a failure of the debtor to deny, on the return of the order to show cause, the allegation of the petition as to the number and amount of creditors; and so, of a like judgment, on an admission by the debtor, on the filing of the petition, that the requisite number and amount of creditors have petitioned. Unless this be so, there is no necessary limit to the number of times the court may be required to re-examine the question thus declared to be finally adjudged. I speak now of an allegation merely that the court in fact erred, and not of an allegation of fraud or bad faith.

These provisions show that the judgment is final not only as respects the debtor, but as respects all his creditors. It is final as respects his estate and all interested in it. It is in the nature of a judgment in rem in respect to the matter adjudged by it. These provisions further show that the requirement of the statute that the petition shall be the petition of one-fourth in number and one-third in amount of the creditors, is not a jurisdictional point, or a quasi jurisdictional point, in such wise that, when there is a proper allegation in the petition as to the number and amount of creditors, and when there is a judgment of the court that such allegation is true, the fact can be re-examined, either by the court which rendered the judgment, or in a collateral proceeding, unless fraud be alleged and proved. The observations of Judge Lowell, in Ex parte Jewett [Case No. 7,303] seem to me to be entirely sound. He says: "I cannot admit that the number and amount of petitioners have anything to do with the jurisdiction of the court. Congress has very carefully provided, that a want of parties shall be taken advantage of as a strictly dilatory plea, and be disposed of in a summary way, not for the purpose of ascertaining the jurisdiction of the court, but the sufficiency of the plaintiff's petition, which is a very different thing. If the court should decide wrongly on that point, its decision would bind all the world. The district court has jurisdiction in bankruptcy of every person residing within the district, who owes three hundred dollars of provable debts; and, when a paper which purports to be a petition in bankruptcy, and which alleges such residence and indebtedness, is filed, and an order of notice has been duly served, there is and can be no jurisdictional fact remaining, if the residence and indebtedness to the extent of three hundred dollars are admitted. The court may then proceed to allow or refuse amendments, or do anything else proper for a court to do that has undoubted jurisdiction of the subject matter and the parties." In that case, the petition was one in involuntary bankruptcy, and there had been no adjudication; but a resolution for a composition had been passed. It was objected that the petition was fatally defective, and gave no jurisdiction to the court, so that a case in bankruptcy could be said to be pending, because it averred that the petitioning creditors constituted the requisite number and amount of the creditors of one of the petitioning creditors instead of the person proceeded against. The court, while of opinion that no amendment was necessary, granted a motion to amend in the above particular.

In the present case, the petition contains all the necessary jurisdictional allegations, and the further allegation that the petitioners constitute one-fourth, at least, in number, of all the creditors of the debtors, as copartners in business in the city of New York, under the firm name of Duncan, Sherman & Co., whose debts exceed $250, and that the aggregate of the petitioners' debts, provable under the statute, amounts to at least one-third of all the debts so provable against the debtors as such copartners. It then proceeds to set out the natures and amounts of the several claims of the petitioning creditors. It nowhere appears, in the petition,

what is the total number of all the creditors of the debtors whose debts exceed $250, or what is the total amount of the debts provable against the debtors, so that the court can say, on inspecting the petition, and comparing the number of petitioning creditors with any total number, or the aggregate of the debts set forth as debts due to the petitioning creditors with any total amount of provable debts, that the requisite number and amount of creditors have not petitioned. There is an allegation in the petition that they have. Hence, such allegation cannot be regarded as being overborne or controlled by any conflicting facts appearing on the face of the petition. This observation applies to the error, manifestly clerical, in omitting to fill in the amounts of the debts in three instances, and to the statement of the claim of Baring Brothers & Co.

As to any facts set forth in the affidavit of Walter S. Carter, presented to the court with the petition, to satisfy the court that the admission of the debtors was made in good faith, such affidavit was no part of the petition. The court received it as evidence of the good faith of the admission, and acted upon it, and thereupon, upon it and upon the petition, adjudged that the requisite number and amount had petitioned. Any inquiry now into the truth of the facts set forth in such affidavit, or any re-examination of the fact adjudged by the court, is forbidden, as before shown, unless fraud or bad faith be alleged.

As to fraud or bad faith, there is not the slightest evidence that the petitioning creditors, or any of them, in signing the petition containing the allegations it does, did not, in good faith, believe those allegations to be true, or were parties to any fraud or imposition, in respect of any of such allegations. Nor is there any evidence that the debtors, in signing the admission they did, practised any fraud or imposition, or acted in bad faith; nor that Mr. Carter did so, in making the statements contained in his affidavit. Moreover, if I were now to entertain the forbidden inquiry as to whether the petitioning creditors did, when the petition was filed, constitute the requisite number and amount, the burden of proof, after an adjudication made on a petition regular on its face, would be on those who apply to set aside the adjudication; and, on the evidence now adduced on the question, I could not hesitate to say that the applicants had failed to make out that the petitioning creditors were not sufficient in number and amount.

The adjudication is further attacked on the ground of what is called "collusion" by the debtors. This collusion is alleged to consist in the fact that the debtors gave their aid and assistance to the signing, presenting and filing of the petition filed against them, and followed that up by making the written admission and waiver of service of the order to show cause, before set forth. They so-

licited some of their creditors to join in the petition against them, and they sent a circular note signed by themselves to others of their creditors, saying that "a movement is now on foot among some of our leading creditors to put us into involuntary bankruptcy, and we feel assured that this course will realize the most to our creditors, and be the best for all concerned," and asking for the signature of the creditor to an appended paper, authorizing the attorneys who represent the petitioning creditors in these proceedings to sign the creditor's name to a petition in bankruptcy against the debtors. It is alleged that the debtors thus favored, instead of resisting, what is, under the statute, a hostile proceeding, and thus made it ostensibly hostile when it was really not hostile; that what the debtors ought to have done was, to file a petition in voluntary bankruptcy; that, under this involuntary petition, they will, if otherwise entitled to a discharge, be enabled to procure it without paying the proportion of their debts, or obtaining the assent of creditors, required in respect of proceedings under a voluntary petition; and that they ought not to be allowed to obtain, by promoting the involuntary proceedings, an advantage which they would not have enjoyed if they had filed a voluntary petition.

No creditor who joined in the involuntary petition appears, to make any complaint in respect of any matter. The creditors who joined in it have rights which the court is bound to consider. They took these proceedings, as is very apparent, for the purpose of securing, as far as possible, an equal distribution of the property of the debtors among all their unsecured creditors, and for the purpose of preventing any more creditors besides those who might, by the proceedings in the state courts, have already acquired liens or rights of preference, from acquiring liens or rights of preference by proceedings in the state courts. This was a lawful motive and a lawful result. It is one of the results aimed at by the bankruptcy statute. Creditors who desire to secure such result, secure it by the mere filing of the proper petition in involuntary bankruptcy, if it be followed by an adjudication. No injunction to restrain such proceedings in the state courts is necessary, to make the filing of the petition effective to prevent after-acquired liens or rights of preference from attaching. If such injunction is desirable to prevent embarrassment in the future from such proceedings, it is granted on the application of the petitioning creditors as well as on the application of the bankrupts. U. S. v. Bancroft [Case No. 14,513]; In re Ulrich [Id. 14,328]; In re Clark [Id. 2,801]. The petitioning creditors in this case manifestly concurred and concur in the view expressed in the circular note of the debtors, that the administration of the estate of the debtors in bankruptcy would realize the most to their creditors, and be the

best for all concerned, both creditors and debtors. The estate might be brought into the bankruptcy court by involuntary proceedings, or by a voluntary petition by the debtors. The creditors could not compel the debtors to file a voluntary petition. All that the creditors could do to secure their own interests, in respect of bankruptcy proceedings, was to combine and unite in a petition in involuntary bankruptcy, to the requisite number and value. It was deemed by them important and necessary that they should do so, for the ends before stated. If they could secure the co-operation of their debtors, not only in not resisting the petition, but in inducing, by lawful means, creditors to join in the petition, and in making the written admission invited by the statute, as to the requisite number and amount of creditors, and in appearing and waiving service of notice and consenting to an adjudication, as invited by sections 40 and 41 of the act of 1867 (now sections 5025 and 5026 of the Revised Statutes), such action of the debtors cannot, without an entire abrogation of the provisions of the statute, be held to be unlawful. It is not alleged or shown that the debtors or any creditor influenced the action of any creditor in respect of uniting in the involuntary petition, by any pecuniary consideration or obligation, within the purview of section 5110 of the Revised Statutes. The fact that, as an incident of the involuntary proceedings, the debtors will, if otherwise entitled to a discharge, be enabled to secure it without paying any percentage of their debts or obtaining the assent of any of their creditors, is no valid objection to an adjudication in involuntary bankruptcy shown to have been aided by the debtors in the manner in which such aid was given in the present case. As pointed out by me in Re Scull [Case No. 12,568], the provision of the statute, that, in cases of involuntary bankruptcy, the bankrupt may receive a discharge, if otherwise entitled thereto, without paying any proportion of his debts, and without procuring the assent of any portion of his creditors, as a condition of his discharge, while, in cases of voluntary bankruptcy, no discharge can be granted to a debtor whose assets are not equal to 30 per centum of the claims proved against his estate, upon which he is liable as principal debtor, without the assent of at least one-fourth of his creditors in number and one-third in value, is based on the view, that, if one-fourth in number and one-third in value of the creditors petition in involuntary bankruptcy, they shall be regarded, under the provisions of the statute, as assenting to the discharge of the bankrupt, in like manner as one-fourth in number and one-third in value assent in voluntary bankruptcy. This view is concurred in by Judge Lowell, in Re Wilson [Case No. 17,784]. As the debtor is expressly allowed by the statute to procure, by lawful solicitation from his creditors, their affirmative assent to his discharge, in proceedings in voluntary bankruptcy, no reasonable objection can exist to his procuring from them, by lawful solicitation, their implied assent to his discharge, in proceedings in involuntary bankruptcy, by procuring, by lawful solicitation, their signatures to the petition in involuntary bankruptcy, if such creditors deem it for their interest to institute proceedings in involuntary bankruptcy.

I do not perceive that Mr. Elliot was a partner who should have been joined in the proceedings.

As to the suggestion that certain conveyances, transfers and assignments, and a general assignment by the bankrupts, all made more than four months before the petition in bankruptcy was filed, could have been set aside by the assignee in bankruptcy as being in fraud of the bankruptcy statute, if the bankrupts had filed a voluntary petition within the time limited by the 35th section of the act of 1867 (now sections 5128 and 5129 of the Revised Statutes), as modified by section 10 of the act of 1874, after the transactions occurred, it is a sufficient answer to say, that the observation is equally true of the failure of creditors to file an involuntary petition within the time so limited, as the limitation in the statute is expressly applied to one and the same period before the filing of a petition against the debtor and before the filing of a petition by him. But the fact that both the creditors and the debtors failed to file any petition in bankruptcy until the one now under consideration was filed, and that thus certain transfers which might have been attacked as in fraud of the bankruptcy statute, cannot now be attacked, can in no manner bear on the question of the validity of the present proceedings in bankruptcy. Creditors were the persons most concerned in setting aside, under bankruptcy proceedings, transactions which could be set aside as in violation of the bankruptcy statute, and could not otherwise be set aside, and, if they did not choose to avail themselves of opportunities which the bankruptcy statute would have afforded in case they or the debtors had filed a petition in bankruptcy at an earlier day, that fact can be no objection to the filing of the present petition, with the other advantages to grow out of it, that are accorded by the statute to creditors and debtors.

It is alleged that certain conveyances, transfers and assignments made by one or more or all of the debtors prior to the filing of the petition, were, because of certain irregularities, defects and unlawful intents, void and of no effect, as having been made with intent to delay, defraud or hinder the creditors of the debtors, and for other reasons, and it is claimed that this court ought to allow the creditors who have commenced proceedings in the state courts to set aside such conveyances, transfers and assignments, to prosecute further such proceedings.

Among other things, it is contended that the power and the right of an assignee in bankruptcy will not extend to the setting aside of the instruments in question. The sufficient reply to this suggestion is, that, so far as any property was the property of the bankrupts when the petition was filed, for the reason that the title to it had not passed out of the bankrupts by conveyances proper and adequate in form to convey it, it vests in their assignee when appointed, and he can collect it as assets; and that, so far as any property has been conveyed by the bankrupts in fraud of their creditors, such property, by section 5046 of the Revised Statutes, vests in the assignee in bankruptcy, and he can recover it by a suit to set aside the fraudulent conveyances. If it be necessary that the assignee in bankruptcy should in such a suit, be shown to represent a creditor who had, before the petition in bankruptcy was filed and before the title of such assignee accrued, acquired a specific lien upon the property fraudulently conveyed, on the ground that such assignee cannot set aside a conveyance which a creditor could not set aside, and that, under the laws of New York, a creditor must have acquired a specific lien upon property fraudulently conveyed by his debtor, in order to entitle him to maintain a suit to set aside the conveyance, it is manifest, that if, when the petition in bankruptcy was filed, there was a creditor occupying such a position, the assignee represents such creditor, and can maintain any suit which such creditor could maintain; and that if, when the petition in bankruptcy was filed, there was no such creditor, no creditor can, after the filing of the petition in bankruptcy, acquire any such lien on property, as the property of the bankrupt, as against the assignee in bankruptcy and the general creditors represented by him. The consideration, that no creditor can acquire a lien on the property of a bankrupt after the filing of a petition in bankruptcy, and that it may be that there was no creditor having a lien when the petition was filed, would seem to indicate, that, to hold that an assignee in bankruptcy cannot, under the provision of the statute which declares that "all the property conveyed by the bankrupt in fraud of his creditors" "shall", in virtue of the adjudication in bankruptcy and the appointment of his assignee," "be at once vested in such assignee," recover the property thus declared to be vested in him, unless there was a creditor having a lien when the petition was filed, would entirely render nugatory such provision of the statute, in many cases. Whatever authority may be found in Re Collins [Case No. 3.007], for so holding, would seem to be a departure from what was done in Sedgwick v. Place [Id. 12,621], and in Beecher v. Clark [Id. 1.223], and to be in conflict with the cases of Allen v. Massey [Id. 231]. In re Wynne [Id. 18,117], and Bank of Leavenworth v. Hunt, 11 Wall. [78 U. S.] 391, and with the decision of Judge Woodruff, holding the circuit court for this district, in Re Leland [Case No. 8,234]. But, however this may be, whatever lien any creditor had acquired before the petition in bankruptcy was filed, of such a character as to place him in a condition, at that time, to enforce, by a suit, the setting aside of a conveyance fraudulent as to creditors, or whatever lien he had at that time acquired by bringing any such suit, is preserved by the bankruptcy statute and will be respected and enforced by the bankruptcy court, which acts as much for secured creditors as for unsecured creditors; but it belongs to that court to adjudicate as to all such liens, and it has power to restrain all interference, by suit or otherwise, by individual creditors, with property which, if it be property that was, before the filing of the petition in bankruptcy, transferred by the debtor in fraud of his creditors, is declared by the statute to be property that vests in the assignee. In re Grinnell, [Id. 5,830]; In re Rosenberg [Id. 12,054]; In re Clark [Id. 2,801]; U. S. v. Bancroft [supra]; In re Ulrich [supra]. And, in this connection, it may be observed, that what is vested by the statute in the assignee in bankruptcy is all the property conveyed by the bankrupt in fraud of his creditors, and not merely such right of action, in respect of such property, as the bankrupt had, or as any creditor had, when the petition in bankruptcy was filed; and that, as the filing of such petition prevents the after attachment of liens on such property, as against the assignee and the creditors of the estate, it is not only proper but necessary to regard the vesting of the assignee with the title to such property, as giving him a right to recover and reduce to possession his own property, and as displacing any requirement which otherwise might exist, that he shall represent a creditor who was, at the time the petition was filed, clothed with legal process against the property, because the title to property is a broader interest than a lien on property, and the existence of such title satisfies every principle upon which the existence of a lien or of legal process has been held to be requisite.

In the present case the suits already brought and those desired to be brought in the state court are numerous, and the case is one in which it is proper to continue the injunctions and stays granted until an assignee in bankruptcy is appointed and can have an opportunity. on behalf of the creditors, to examine into the matters relating to the estate of the bankrupts, and determine what action he will take in respect to the property which it is alleged was transferred in fraud of creditors or was the property of the bankrupts when the petition in bankruptcy was filed.

As to the examination of the bankrupts in the bankruptcy proceedings, the provisions

of section 5086 of the Revised Statutes are ample to allow creditors to obtain an examination of the bankrupts.

[The Case of Mrs. Ferrero (unreported) is governed by the decision of this court in Re Rosenberg [Case No. 12,054]. Her suit is really to recover the money she paid to the bankrupts on purchasing a bill of exchange, and is a provable debt, although it will not be dischargeable if it shall be shown to have been created by fraud. Such a suit and all proceedings in it are to be stayed, on the application of the bankrupts, until the question of their discharge is determined.][2]

I have intended to cover all the questions raised in the voluminous papers and exhaustive briefs in this case and have considered them all, even though I may have failed to discuss some of them as fully as others. It results that all the applications must be denied, except that of the petitioning creditors, to continue in force, on their behalf, as against the persons heretofore enjoined on the application of the bankrupts, the injunctions so granted, and to restrain such persons from interfering with any property of the bankrupts, or any property which, by operation of law, will pass to their assignee in bankruptcy when appointed.