Smith & Gibson *vs.* Pate & Stubbs.

---

HEARD APRIL TERM, 1871.

## SMITH & GIBSON *vs.* PATE & STUBBS.

Bill by junior judgment creditors of S. to set aside, as fraudulent, an older judgment for $2,000, confessed by S. to P. The Circuit Court set aside the judgment, and, on appeal, the Supreme Court ordered two issues to be tried by a jury, to determine; (1.) Whether P., in taking the judgment, was guilty of a fraud; and, (2,) What was the actual value of the consideration of the judgment? The jury found that P. was guilty of no fraud in taking the judgment; and that the actual value of the consideration was $600. The finding having been certfiied to the Supreme Court, *held*, that there being no fraud in the judgment, the jurisdiction of the Court was at an end, and the bill must be dismissed.

A judgment by confession, given in February, 1867, and based upon a consideration in Confederate currency, when that currency was greatly depreciated, is not fraudulent and void as against other creditors of the judgment debtor, merely because the judgment was taken for more than the actual value of the consideration in lawful money.

In some cases of legal fraud, the Court, in setting aside the judgment by confession, at the suit of junior judgment creditors, will allow the judgment creditor the actual value of the consideration of his judgment, but where the fraud as alleged is found not to exist, the Court cannot proceed further, and reduce the amount of the judgment to the actual value of the consideration.

Where a judgment by confession is untainted with fraud on the part of the judgment creditor, it will not be set aside at the suit of junior judgment creditors, merely because the debtor had, when he gave the confession, expectations of benefit to himself therefrom, at the expense of other creditors, which, if communicated to the judgment creditor, would have made the confession fraudulent.

On February 19th, 1867, the defendant, John W. Stubbs, gave to the defendant, L. Garlington Pate, his promissory note for $2,000, and a confession of judgment thereon for the same amount. On March 30th, 1867, the plaintiff, John H. Smith, recovered a judgment against Stubbs for $733.24, and on the same day the plaintiff, Noah Gibson, recovered a judgment against him for $390.02.

This was a bill in equity, by Smith & Gibson, to set aside the judgment to Pate, on the ground, as alleged in the bill, that it was without consideration, and fraudulent as against creditors.

Pate, by his answer, which was responsive to the charges and interrogatories of the bill, set forth the consideration of the note and confession, as follows :

"In February or March, 1865, this defendant, who then resided, and still resides in Sumter District, (now Sumter County) in said State, was with his wife, who is a daughter of the said Stubbs, at the residence of said Stubbs, in Marlborough District, on a visit to him and his family ; that during their visit part of the army of Gen. Sherman were at the residence of the said Stubbs, and carried off or destroyed all the work animals of the said Stubbs, who was a farmer in comfortable circumstances ; that after said army had left, the said Stubbs entreated this defendant to return to Sumter, and purchase or otherwise procure for him, at any cost, some mules and horses, to enable him to make a crop ; that this defendant complied with his request, and accompanied by a son of the said Stubbs returned immediately to Sumter, and purchased there with his, (this defendant's) own means, one grey mule, one sorrel or bay mule, one sorrel horse and one bay horse, four in all, and returned with them to the residence of the said Stubbs, and delivered them to him there ; that this defendant cannot now state the exact price he paid for said mules and horses, but is certain it was over six thousand dollars, and to the best of his recollection and belief, near seven thousand dollars in Confederate money ; that such animals were at that time very scarce, and it was difficult to procure them, and on this defendant's way back to Marlborough with them, he was offered a large sum of money, three or four thousand dollars, he is not certain which, for one alone ; that this defendant does not know, and, therefore, cannot state, what the respective ages of the said mules and horses were, and as to condition he would say, they were then thin, but not too thin to be worked, and were, in fact, immediately put to work by the said Stubbs—that he did not at that time apply to the said Stubbs for payment, nor did the said Stubbs

give this defendant any note or acknowledgment of indebtedness, nor did any writings pass between them; that all this occurred before the surrender of Gen. Lee's army; that the defendant did not apply to the said Stubbs for settlement of his indebtedness to this defendant, on account of his purchase of said mules and horses, until some five or six months before February, 1867, when he did make such application; that the said Stubbs then acknowledged that he was under obligations to this defendant for what he had done for him—said that he did not then have the means of payment—but assured this defendant that he should be paid; that nothing more passed between them, the said Stubbs and this defendant, in reference to payment or a settlement, until a short time before the confession of judgment to this defendant was made, when the said Stubbs wrote to this defendant to the effect, as well as he remembers, the letter not being now before him, that he, Stubbs, was willing to allow this defendant two thousand dollars on account of his purchase of said mules and horses, and that if he, this defendant, would draw a note for that amount, and send it to an attorney in Marlborough, he, the said Stubbs, would sign said note, and secure this defendant, by giving him a confession of judgment thereon, if he, this defendant, would stay the execution; that this defendant was satisfied with the arrangement proposed, and accordingly drew a note for two thousand dollars, and sent it to an attorney in Bennettsville, with instructions to have it signed, procure a confession of judgment thereon, and stay the execution; and this defendant afterwards learned that his instructions had been carried out."

The issues made by the pleadings were tried at Marlborough, May Term, 1869, and the Circuit Judge made a decree setting aside the judgment as "tainted not only with legal, but actual fraud." Pate appealed, and moved this Court to reverse the decree and dismiss the bill, on the ground, chiefly, of error in the conclusions of the Judge upon the questions of fact.

The appeal was heard at April Term, 1870, and this Court made an order at November Term, 1870, directing the case to be remanded to the Circuit Court, "that the verdict of a jury may be had on the following issues of fact, to be submitted to them"—defendants to be actors on the first and second issues, and plaintiff on the third :

1. What was the consideration of the note from Stubbs to Pate, on which the confession was taken; and if such consideration was horses and mules, or either, what was their value when delivered?

2. If the consideration was horses and mules, or either, and carried from Sumter to the residence of Stubbs by Pate, what, at the time, would be a fair compensation, having regard to the actual expense and the risk of transportation, for such expense and risk ?

3. Was the judgment taken by Pate with the view fraudulently to delay, hinder or prevent Smith and Gibson, or either of them, in the recovery of their debts from Stubbs ?

The order directed the Circuit Judge to send up to this Court a report of the evidence taken at the trial of the issues, and a copy of the verdict.

The issues were tried at Marlborough, January Term, 1871, and the jury found, on the first issue, that the consideration of the note was two mules and one horse, and that their value, at the time of delivery, was $400; on the second, that $200 would be a fair compensation for risk, &c., in their transportation from Sumter to Marlborough; and on the third, that the judgment was not taken by Pate with the view fraudulently to delay, hinder or prevent Smith and Gibson, or either of them, in the recovery of their debts from Stubbs.

The evidence taken at the trial, and the verdict having been certified to this Court, the defendant Pate now moved the Court to dismiss the bill, on the ground that the fact that there was no fraud in the taking of the confession being now established by the verdict, the jurisdiction of the Court was at an end—fraud being the only ground upon which the bill could be sustained. The plaintiffs moved the Court, at the same time, to disregard the verdict and dismiss the appeal *non obstante veredicto,* on the ground that the verdict was clearly against the evidence, and failing in that motion, then for a new trial, and an enlargement of the issue, so as to embrace Stubbs in the question of fraudulent intent as well as Pate.

*Townsend, J. S. G. Richardson,* for appellant.
*Hudson,* contra.

Feb. 7, 1872. The opinion of the Court was delivered by

Moses, C. J. The issue ordered by the Court in this cause was not only to ascertain the true consideration of the note given to Pate by J. W. Stubbs, but to determine whether the judgment confessed upon it was taken by Pate with the view, fraudulently, to delay, hinder or prevent the plaintiffs, Smith and Gibson, or either of them, in the recovery of their debts from the said Stubbs. To this, the jury, on the issue so submitted to them, have responded in the

negative. In the class of cases referred to in the argument on be-half of the plaintiffs, where the Court refused to permit the judg-ment to stand of force to the extent of the true consideration on which it was founded, the intent fraudulently to delay and hinder creditors was found by the jury or established by the decree. Here, however, the jury, by their verdict, ignore such intent on the part of Pate. The bill was filed to set aside the judgment on the ground of fraud alone, and when this has been negatived by the jury all claim to the interposition of a Court of Equity for a reduction of the amount for which the judgment was taken ceases.

Where an advantage has been obtained under circumstances which lead to a suspicion of fraud, the party for whose benefit it was intended will not be allowed to retain it at the expense of *bona fide* creditors, although equity might so far interfere as to permit the instrument through which such benefit was to be obtained, to stand for the real value of the consideration. Where, however, it appears that the transaction was fraudulent in itself, and therefore void, in the language of the books, "the Court is not bound to dis-entangle a web of fraud to ascertain if any good material be mixed in it."

The bill in the case before us charges that the judgment was without consideration, and fraudulent as against creditors, and the jury have not only found that there was a consideration, though not equal to the whole amount for which it was taken, but that there was no fraudulent purpose on the part of Pate.

The real value of the animals and the expense of their transpor-tation, which formed the consideration of the note, give no claim to the plaintiffs to have the judgment reduced to the amount which would represent the proper sum at which such value and expenses should be assessed. If there was no fraud by Pate, it was compe-tent for him to fix the rate for his property and services, no matter what may have been the view of Stubbs in assenting, provided the motive was unknown to Pate, and such conclusion we are obliged to infer from the verdict.

Nor can it avail the plaintiffs that the language of the issue sub-mitted precluded enquiry into the fraudulent intent on the part of Stubbs. It would be inconsistent with every principle of law and morals to say that Pate, who has been acquitted of all wrong by the verdict of the jury, should in any way be affected by the fraudulent motive which may have actuated Stubbs in the transaction. To visit the consequences of the improper design of Stubbs on the head

of Pate, would not comport with the verdict which acquits him of any participation in the fraud, for had he in any way connived with Stubbs in the motive which may have influenced him, prompted by a common purpose, he would be as obnoxious to the charge of fraud as Stubbs himself. It would not only be a hard, but most unjust rule, when the jury have acquitted Pate of a fraudulent design, to deprive him of the benefit of his judgment, because Stubbs, in giving it, may have had in view some hope of advantage to himself at the expense of his creditors.

The issue was ordered by this Court, because it was not satisfied with the conclusion of the Circuit Judge, "that the judgment was tainted not only with legal but actual fraud." It is not necessary to enter into an analysis or examination of the testimony for the purpose of sustaining the views on which this Court based its judgment. It might be enough to say that it was impressed by the circumstance of the absence of all proof that Pate, when he took the confession, had any knowledge of the indebtedness of Stubbs to others. It is competent for this Court to order a new trial, or even to decree, according to its own view of the case, *non obstante veredicto*. The object of ordering an issue to be tried by a jury of the vicinage, was to test the questions of fact involved, by the judgment of that tribunal more peculiarly fitted by its knowledge of the witnesses to arrive at a proper solution through the evidence submitted. We do not see such manifest error in their judgment as should authorize us either to set it aside, or to decree in the face of it.

It is ordered and adjudged that the bill be dismissed, each party to pay his own costs.

*Willard*, A. J., and *Wright*, A. J., concurred.