<hr />

HEARD APRIL TERM, 1879.

CASE No. 844.*

FRANCIS ARNOLD v. JESSE HOUSE AND J. E. DENT.

1. A judgment which was valid in its origin, but fraudulently renewed for more than the balance remaining unpaid thereon, will be sustained for the amount actually due.

2. A purchaser at sheriff's sale is liable for interest from day of sale on so much of his bid as is applicable to judgments not his own.

3. The findings of fact by the Circuit Court will not be disturbed, unless the evidence manifestly and plainly indicates a different result.†

<hr />

Before PRESSLEY, J., Richland, November, 1878.

Hon. Thomas Thomson, judge of the Eighth Circuit, sat at. the hearing of this case in the place of Associate Justice Haskell, who had been one of the counsel in the cause.

On March 31st, 1858, Jesse House obtained a judgment against Jacob H. Ledingham, in the Court of Common Pleas. for Richland district, for $800 and costs. October 1st, 1859, a payment was made upon the execution in the case. February

<hr />

* This case is inserted in advance of its proper place in the order of filing so as to complete, in this volume, the publication of all cases heard prior to November Term, 1879.

† See note at end of this case.

17th, 1865, all the records and papers in the offices of the clerk of the court and sheriff for this district were destroyed with the court-house in the burning of the city of Columbia.

In 1866 or 1867, Francis Arnold advanced to Kinard money to pay the debts of Falls & Kinard, of which firm Kinard was survivor, it being agreed at the time that assets of the firm sufficient to repay the sum advanced should be transferred to Arnold. Jacob H. Ledingham, a debtor by open account to the firm, at the request of Kinard, executed his note for the amount of his indebtedness, payable to Arnold, to whom it was soon afterwards delivered, in pursuance of the above agreement. Upon this note judgment was obtained by Arnold against Ledingham, and execution issued in October, 1870.

Meantime, to wit, in January, 1869, House employed counsel to institute proper proceedings to have his judgment restored and revived, under the authority of the acts of the general assembly authorizing the substitution of records destroyed during the late war. 13 *Stat.* 384, 411. Action was promptly commenced, House stating that the credit of October 1st, 1859, was $300 and costs; Ledingham resisted upon the ground that the proper credit was $550. The case never came to a hearing, House alleging from no fault of his.

In January, 1875, a tract of land belonging to Ledingham was sold by J. E. Dent, sheriff, under the Arnold judgment, and was bid off by a daughter of Ledingham for $1251. She subsequently assigned her bid to House. After the sale and before this transfer of bid, Ledingham under hand and seal acknowledged the recovery of the House judgment, and that there was a credit thereon of $300 of date October 1st, 1859, and consented that the record be restored and judgment substituted for balance due. The amount of Miss Ledingham's bid was credited on House's judgment, and deed given by the sheriff to House, as soon as the order of the court, substituting the judgment, was obtained.

This action was commenced in August, 1877, to have the deed of Sheriff Dent to House canceled and the lands resold, or to have the money paid by House and applied to the Arnold judgment, upon the ground that it was fraudulently restored for a

sum largely in excess of the amount actually due. As to the correct credit upon the House judgment, and as to whether the consent given by Ledingham to House was in consideration of promises of benefit to Ledingham or his family, there was testimony *pro et contra.* The referee, to whom were referred all the issues, concluded "that the proceeding by which House's record was restored, has not the stamp of that *bona fides* which is necessary to sustain it." The report of the referee, Hon. F. W. Fickling, concluded as follows:

I find, therefore, as conclusions of law—

1. That the fifth section of the act of September 20th, 1866, does embrace judgments and decrees.

2. That the plaintiff, Francis Arnold, is a creditor without notice, in the contemplation of that act.

3. That the judgment of House against Ledingham is, as against the judgment of Francis Arnold against Jacob H. Ledingham, fraudulent and void.

4. That even if not tainted with fraud, the judgment of House against Ledingham, resting on admissions of Ledingham, made after execution levied and lien established in the case of Arnold against Ledingham, cannot divert the lien of the latter judgment, but would in any event be postponed to that judgment.

And I find the following conclusions of fact—

1. That there was paid on the judgment of House against Ledingham, on the first day of October, 1859, the sum of $500 and the costs.

2. That the substituted judgment of House against Ledingham was not obtained in good faith, and as to the judgment of Arnold against Ledingham is fraudulent and void.

And the report gave judgment against House in favor of Arnold for the amount of his bid with interest, and on failure to pay, a resale of the land, &c.

Upon exceptions to this report, Judge Pressley rendered the following decree:

The act of assembly of 1865 makes provision for perpetuating the testimony concerning lost deeds and other papers; also, for substituting new records of judgments and decrees, which have been lost or destroyed.

An abstract of these substitutes was to be entered, in proper abstract books, but no time was fixed within which that was to be done, nor did the act require that deeds and mortgages should be again recorded if the previous record thereof had been destroyed.

The fifth section of the act of 1866 remedies these defects by providing that "all written instruments of which a record is required by law, and of which the record has been lost, but the original preserved, and the substitutes, provided in said act for such originals, in case of their loss, shall be recorded within six months from the ratification of this act, otherwise they shall not prevail as liens against subsequent purchasers for valuable consideration, nor creditors without "notice."

It seems clear to me that the words of the above section include judgments, and require them to be recorded within the time therein limited. It has been questioned whether the word "subsequent" applied to "creditors" as well as "purchasers." I have no doubt that it does; and further, that it means creditors subsequent to the date of the said act; just as in the case of an unrecorded mortgage, which does not prevail against a purchaser subsequent to its date, even though he may have been precedent to the date fixed by law for recording such mortgage.

As the defendant, House, did not within the time required get an order of the court to substitute a new record of his judgment, the next question is, whether Arnold is a creditor without notice. His debtor, Ledingham, was originally the debtor of Falls & Kinard, and his debt to them was contracted in 1860, whilst the record of the said lost judgment yet existed. They, therefore, had such legal notice of the said judgment as would affect them and their assignee of the said debt. But, after careful examination of the testimony, I think that Arnold is not a mere assignee. In 1866 he advanced money to Falls & Kinard, they agreeing to pay the said advances in good notes of their debtors, made payable to Arnold. As soon as such notes equal to the amount advanced were delivered to him, that discharged his claim on the remaining assets of Falls & Kinard. Pursuant to said agreement, in February, 1867, they procured from Ledingham his note payable to Arnold, which he then accepted with other notes

of the same character. And thus, at that time, for valuable consideration, he became the creditor of Ledingham, without notice of the said lost judgment.

In 1870 Arnold obtained judgment against Ledingham on the said note, and the execution thereon was levied on the land in question in December, 1874. Before the sale in January ensuing, House gave notice of his judgment, and was about to stay the sale. Thereupon it was agreed by Arnold, through his attorneys, that their bid for the land should be the amount then claimed by House, and that the purchase money should remain with the sheriff until the determination of the steps to establish the existence of the House judgment. That determination was had in February, 1875, and then House claimed and received from the sheriff a conveyance of the land, crediting the purchase money upon his said judgment. The referee, without any proof on the point, reports that Arnold did not have notice of the said settlement. But I think that notice to him may and must be presumed from the circumstances of the case; he had levied upon the land in question, and had been prevented from receiving the purchase money by the said notice from House; he had also agreed that the said purchase money should remain with the sheriff until the determination by the court on House's application for renewal of his judgment. Under such circumstances it cannot be doubted that he must have watched the progress of that application and knew of its determination. When, therefore, he permitted House to make the said settlement with the sheriff, that was an abandonment of the contest, and having done that, he cannot now, after so long a lapse of time, set up the claim that he was then a creditor without notice, and as such having rights superior to those of House.

But though Arnold, by his said waiver, has lost the priority which he might have maintained, yet he may still dispute the amount of House's judgment. Only lately did he discover that there was collusion between House and Ledingham, whereby the amount of the said judgment was fixed at a larger sum than then remained unpaid thereon. The referee reports that there was such collusion, and that the true amount then unpaid was only $826.86. I adopt his conclusion, not because the testimony

is entirely satisfactory to me, but because it is contradictory, and the referee, who personally examined some of the witnesses, can estimate the value of their testimony better than I can.

The referee also reports that, because of the said collusion, the said judgment should be entirely set aside as fraudulent; but I do not concur with him in this. It was free from all taint of fraud when first entered in 1858, and I find no authority for setting aside a judgment, valid in its origin, because by collusion between the parties thereto it was afterward renewed for more than remained unpaid thereon.

The defendant, House, by taking the place of the bidder, and by his settlement with the sheriff, 1875, gained, and, under this decree, is allowed to retain, very substantial benefit. I therefore hold him liable as purchaser of the said land at the price fixed at that time. On that basis there is a balance of $424.24 due by him, according to the report of the referee, after allowing him the true amount of his judgment.

*It is therefore adjudged and decreed,* that the defendant, Jesse House, pay to the plaintiff, Francis Arnold, the said sum of $424.24, and the costs of this case; and, upon his failure to pay the same within thirty days after this decree is filed, that plaintiff have leave to enter judgment against him under this decree, and to issue execution thereon.

From this decree, both parties appealed. The plaintiff's exceptions are as follows:

1. Because, it is respectfully submitted, his Honor erred in deciding that, although the lien of the plaintiff's judgment was prior to that of the defendant, House, and the plaintiff was therefore entitled to the proceeds of the sale of the lands of the judgment debtor, yet the plaintiff was to be deprived of the rights incident to his superior lien, because he was "to be presumed" to have notice of the "settlement" between the sheriff and House—and this contrary to the report of the referee, notwithstanding that there was not a tittle of evidence that the plaintiff had any notice, and notwithstanding that no third person could in any manner be affected by a decree restoring the parties to their legal rights.

2. Because his Honor erred in deciding that any agreement

was made by the plaintiff, through his attorneys, in respect to the bid to be made upon the land, or the purchase money, or any other matter whatsoever.

3. Because his Honor erred in decreeing that the substituted record of the judgment in favor of the defendant, House, should stand for the sum of $826.86, notwithstanding the same was procured by fraud and collusion.

4. Because his Honor erred in failing to charge the defendant, House, with interest upon the unpaid purchase money of the land from the day of sale.

5. Because the said decree authorizes no more than a judgment for money against the defendant, House; whereas, it is submitted the plaintiff was clearly entitled to the security of the, land for the payment of his prior judgment, or any amount due thereon.

6. Because the report of the referee should have been confirmed.

The defendant, House's, exceptions are as follows:

1. Because his Honor should have held that the fifth section of the act of 1866 did not embrace within its limitations "judgment and decrees," but had reference (1) to "instruments in writing," the originals of which had been preserved; (2) or, in case of the loss of such originals, to be certified copies of any such "instruments in writing" as had been preserved; (3) and in case of there being neither original nor certified copy of such "instruments in writing" in existence, then to such substituted lost "instruments in writing" as are provided for in the third, fourth, fifth, sixth and seventh sections of the act of 1865.

2. Because his Honor should have decided that the plaintiff was not a subsequent creditor by the transactions between himself and Kinard, but was an antecedent creditor, occupying no better position than his assignee, in whose shoes he stands.

*Mr. L. E. Le Conte,* for plaintiff.

*Messrs. Pope & Haskell,* for defendants.

March 24th, 1880.  The opinion of the court was delivered by Thomson, A. A. J.  The plaintiff recovered, October 26th, 1870, judgment against Jacob H. Ledingham for the sum of $1029.54.  Jesse House, one of the defendants, obtained a judgment in 1858, against the same party, for the sum of $800. The record of Jesse House's judgment was lost, and it was restored by a new record substituted therefor, by order of the court.  The plaintiff alleged that the judgment of Jesse House was fraudulent, or set up for a fraudulent purpose, and should be postponed to his.  A tract of land of Jacob H. Ledingham had been sold by the sheriff, under execution, for the sum of $1251, and was purchased by a party who transferred the bid to Jesse House.  Jesse House did not pay the money to the sheriff, but claimed that the sum should be applied to his execution, and credited thereon. The plaintiff insisted that no credit should be allowed Jesse House, and that all the purchase money should be paid to the sheriff.  All the issues in the case were submitted to a referee.  The referee made his report, and held the judgment of Jesse House fraudulent in its renewal or restoration as a record; and even were it free from all taint of fraud in this particular, still void and of no effect as against the judgment of the plaintiff.  In this view the referee was not sustained by the Circuit judge, who held a judgment " valid in its origin " could not be set aside, because it was afterwards renewed for more than remained unpaid thereon.  It does not follow that an improper use of a valid security destroys the proper right under the security itself.  The defect must exist in the security which is impaired by the fraudulent purpose or intent entering into the elements of the contract.  The Southwestern Railroad Bank attempted to obtain an unfair preference out of the assets of a failing debtor, the Ocmulgee Bank.  The effort entirely failed, and the assignment given by the latter bank to the former was set aside as against the provisions of law.  But upon an attempt to exclude the debt of the Southwestern Railroad Bank from its proper share of the assets of the Ocmulgee Bank, the court held the action of the Southwestern Railroad Bank did not operate as a forfeiture of its debt also.  The court said there was no principle of equity which exacts this penalty.  A party can be per-

mitted to derive no advantage from his own wrong. This seems the extent of the rule. *Johnston* v. *Southwestern Railroad Bank*, 3 *Strob. Eq.* 330. Upon this point there was no error in the Circuit decree.

For what sum, then, should the judgment of Jesse House stand? Upon this point the Circuit Court affirmed the referee's finding, which stated as unpaid thereon the sum of $826.86. Deducting this sum, with costs from the purchase money, a balance of $424.24 was found in the hands of House, for which the presiding judge gave a decree.

Jesse House became the actual purchaser of the land, and the sheriff executed a deed to him. He leased the land for one year to Jacob H. Ledingham, for the sum of $300. He thus obtained the profits of the property, the value of which was represented in part by money retained in his hands. This money retained was Arnold's, and should have been paid to the sheriff for the plaintiff's use. By assuming the bid and taking the title he contracted with the sheriff to pay the money into his office, or at least so much thereof as he was not entitled to have credited on his judgment. Being in the uninterrupted use of the whole land, and making profit therefrom, he should account for interest on so much of the purchase money as was not his own. *Hampton* v. *Eigleberger*, 2 *Bail.* 520.

The sheriff at his sales may be regarded the agent of both parties, and his entry a liquidation of the sum bid. The sum is thus rendered certain. *Blackwood* v. *Leman, Harper* 219.

Other questions were presented by the exceptions on appeal, in relation to which there was either a concurrence in the views of the Circuit judge, or which did not affect the conclusions reached by the court in the case.

This court, in its exercise of the powers of review, will not disturb the findings of the Circuit Court unless it be manifest that the evidence plainly points out another and different result from that attained by the presiding judge. *Clarke* v. *Jenkins*, 3 *Rich. Eq.* 338; *Austin* v. *Kinsman*, 1 *S. C.* 97.

Interest should be allowed the plaintiff on the sum of money decreed to him from the time the money should have been paid

by House in the sheriff's office, and the decree of the Circuit Court is modified accordingly.

The judgment of the Circuit Court, modified as above, is affirmed and the appeal dismissed.

*Appeal dismissed.*

WILLARD, C. J., and McIVER, A. J., concurred.

---

[NOTE BY THE REPORTER. For the convenience of the profession, it is purposed to group together the decisions of this court since the adoption of the constitution of 1868, determining the power of the Supreme Court to review on appeal findings of fact by the courts below, and the rules which govern the exercise of such power.

The chart of their powers is contained in Article IV., Section 4, of the constitution, which reads as follows: "The Supreme Court shall have appellate jurisdiction only in cases of chancery, and shall constitute a court for the correction of errors at law, under such regulations as the general assembly may, by law, prescribe."

*First.* Appeals from the Court of General Sessions, and from the common law side of the Court of Common Pleas, are governed by the same principles, so far as the jurisdiction of this court is concerned. In either case the verdict of a jury cannot be set aside on appeal for error of fact. This is fully supported by the authorities, and there is no case to the contrary. In the leading case of *State* v. *Bailey,* 1 *S. C.* 1, the authority of the former Court of Appeals in this state, and of the Court of King's Bench in England, and of this court under the constitution of 1868, are considered, and the conclusion stated, that under Article IV., Section 4, of the present constitution, this court is without jurisdiction, and hence has no power to grant a new trial where it is asked upon the ground that the verdict is unsupported by the evidence; that such right rests exclusively with the Circuit judge. In *State* v. *Cardoza,* 11 *S. C.* 195, the point was made that where there is no evidence to sustain a verdict,

2 Q

that it may be set aside here as being necessarily based upon matters outside the case; but the court, in the strongest language, reaffirmed the decision in Bailey's case. The same principle has been recognized in civil cases of common law cognizance; this court cannot sustain the appeal. *Floyd* v. *Abney*, 1 *S. C.* 114; *Elmore* v. *Scurry*, *Id.* 139; *Winsmith* v. *Walker*, 5 *S. C.* 473; *Bardin* v. *Drafts*, 10 *S. C.* 493; *Warren* v. *Lagrone*, *ante* 51.

If the damages awarded by the jury are excessive, this court cannot interfere. *Craven* v. *Rose*, 3 *S. C.* 72; *Joplin* v. *Carrier*, 11 *S. C.* 327. The power to grant relief in such cases rests exclusively with the Circuit judge, whose decision is final. If he refuses to grant a new trial, when the motion is made upon the ground that the verdict is against the evidence or unsupported by it, such refusal cannot be here reviewed. *Abrahams* v. *Kelly*, 2 *S. C.* 235; *Gibbes* v. *Elliott*, 8 *S. C.* 50; *Clarke* v. *Harper*, *Id.* 256. In *Winsmith* v. *Dewberry*, unreported case, No. 774, under the judge's charge, the verdict was absolutely without evidence to support it; but from the same judge's refusal to grant a new trial, the appeal was dismissed. Where a new trial is refused in cases alleging that the verdict awarded excessive damages, the same rule has been uniformly applied. *Brickman* v. *Railroad Co.*, 8 *S. C.* 173; *Steele* v. *Railroad Co.*, 11 *S. C.* 589. An order by the Circuit judge granting a new trial in such cases, is equally beyond the interference of this court. *Byrd* v. *Small*, 2 *S. C.* 388; *Massey* v. *Adams*, 3 *S. C.* 254; *Potts* v. *Bonds*, 10 *S. C.* 498.

Where in a common law action a referee decides the questions of fact, and his findings are confirmed by the Circuit judge, the report stands as the verdict of a jury and cannot be here reviewed, unless it is made to appear that the evidence is incompetent in point of law to support the conclusions of the referee; and that had the case been tried by a jury, the presiding judge would have been justified in directing a verdict to the contrary. But if the evidence is sufficient to entitle the referee to pass upon the questions as matters of fact, then his findings of fact do not constitute errors of law, and this court cannot set them aside. *Kirkland* v. *Cureton*, 4 *S. C.* 122; *Gilliland, Howell & Co.* v. *Gasque*, 6 *S. C.* 406. Where tried by the Circuit judge, without referee or jury, his decision upon the facts is not appealable, unless the judgment is totally devoid of facts to sustain it, thus

involving error of law, which this court may correct. *Whaley* v. *Bank of Charleston*, 5 *S. C.* 189. . Where the evidence is insufficient in law to sustain the action, the Circuit judge's refusal of a motion made by the defendant for a non-suit, is error of law, reviewable on appeal. In such case the cause must be remanded, as this court cannot dismiss the complaint for insufficiency of evidence. *Willis* v. *Knox*, 5 *S. C.* 474. But when there is any evidence at all in the case, it should be submitted to the jury— a non-suit would be erroneous. *Holley* v. *Walker*, 7 *S. C.* 142.

From this statement of the cases, it will be seen that in jury causes this court cannot grant a new trial except for error of law; that where there is no legal evidence to sustain the demand for judgment, it would be error of law to refuse a motion for non-suit, but not where there is any evidence, however slight in support of such demand; that this court cannot review the decision of the Circuit judge, either granting or refusing a new trial, upon grounds involving questions of fact only; that when the case is tried by a Circuit judge without a jury, or upon the report of a referee, his findings of fact are not reviewable on appeal, where there is any evidence to sustain them, but if wholly unsupported by any evidence in the cause, they would be error of law; and the reasoning which has led to the conclusion last stated, induces the belief that whenever the point is raised this court will hold that the refusal of the presiding judge to direct a verdict, where there is no evidence to the contrary, is error of law.

*Second.* In " cases of chancery," this court is not limited to a correction of errors of law, but has appellate jurisdiction, and may, therefore, review and reverse findings of fact by the courts below. The only limitation upon their power in this regard are the rules laid down by their own adjudications. This was suggested in *State* v. *Bailey, supra,* acknowledged in several subsequent cases, and expressly determined in the leading case of *Sullivan* v. *Thomas*, 3 *S. C.* 531, at the hearing of which, Moses, C. J., was absent, but to which he signified his assent in the subsequent case of *Whaley* v. *Bank*, 5 *S. C.* 201.

Questions of fact, then, in " cases of a class of which the Court of Chancery could entertain jurisdiction at the time of the adoption of the constitution " of 1868, may be reviewed here, subject to the principles of the decided cases. Such questions have

come up under four aspects: (1.) Where the conclusions of the Circuit judge confirm those of a referee; (2.) Where they are derived from testimony taken before him in court; (3.) Where they are based upon testimony submitted to him in writing; and (4.) Where the Circuit judge reverses the findings of fact by a referee, who was required to report his conclusions from the evidence.

1. Where the Circuit judge has concurred in the findings of fact by a referee, this court will not reverse them, except on clear or overbearing evidence. *Blackwell* v. *Searles*, 1 *S. C.* 116. This rule has been repeatedly re-affirmed in the same or similar language. In *Adger & Co.* v. *Pringle*, 11 *S. C.* 548, the phraseology is, " unless it is without any testimony to sustain it, or is manifestly against the weight of the evidence." The rule has been uniform and unquestioned; the only difficulty lies in its application. Where the findings have depended upon direct testimony, involving the accuracy or credibility of witnesses, they have been invariably sustained. *Barrett* v. *Cochran*, 11 *S. C.* 29; *Johnson* v. *Henagan*, *Id.* 93; *Fraser & Dill* v. *Charleston*, *Id.* 486. Where the conclusions were drawn inferentially from the facts proven, the rule has caused a dismissal of the appeal in *Austin* v. *Kinsman*, 1 *S. C.* 97; *Blackwell* v. *Searles*, *Id.* 116; *Hinton* v. *Kennedy*, 3 *S. C.* 459; *Eakin* v. *Knox*, 6 *S. C.* 14; *Richardson* v. *Chappell*, *Id.* 146; *Singleton* v. *Lowndes*, 9 *S. C.* 465; *Adger & Co.* v. *Pringle*, 11 *S. C.* 527; and also in *Bradley* v. *Rodelsperger*, 6 *S. C.* 290, which is assumed to be an equity case, as the Supreme Court does not question their right to review the findings of fact by the court below. Concurrent findings by referee and Circuit judge have been reversed in the following cases: *Billings* v. *Clinton*, 6 *S. C.* 90; *Zimmerman* v. *Autley*, *Id.* 379; *Arthur* v. *Anderson*, 9 *S. C.* 234; *Annely* v. *De Saussure*, *ante* 488. The correctness of the rule is not questioned in these cases, as will be observed by reading the cases themselves. In *Billings* v. *Clinton* it was considered that the testimony was not legally sufficient to establish the fact found, and that to other testimony greater weight was attached than was permitted by law. In *Zimmerman* v. *Autley* the court say: " Had they, in drawing their conclusions as to the facts of the case passed upon, all the questions of fact involved and put at issue by the pleadings, and properly applied

the rules of law having a bearing on the case, according to the established practice of this court, their conclusions would not ordinarily be disturbed." And the court proceed to point out the error of the referee in basing his findings of fact upon one badge of fraud only, overlooking other badges clearly disclosed by the evidence, and that the judgment did not follow necessarily from the facts found. In *Arthur* v. *Anderson* it was treated as an error of law, involving " the sufficiency of the evidence as it regards its character and tendency to establish the conclusions derived from it by the court below." *Annely* v. *De Saussure* remains to be considered. In this case the findings of fact by the referee (who was soon afterwards elevated to the bench) were concurred in by the Circuit judge and approved by one of the judges of the Supreme Court. The Chief Justice who delivered the opinion of the court reversing the findings below, while evidently differing with the referee, puts the reversal upon legal grounds. The associate justice whose concurrence made a reversal the judgment of this court, gives no assent to the legal position of the Chief Justice, but finds in the case " a total lack of evidence" to sustain the conclusions below. The reversal was thus reached by a majority of the court, one of whom put it upon a legal principle to which there was no assent, and the other upon a conclusion of fact upon which he alone was willing to rest it. And the third justice dissenting agrees with referee and Circuit judge. If the majority of the court had overruled the findings below as involving errors of fact only, notwithstanding the assent given to such findings by one of their associates, the profession would find it difficult to learn the limitations within which the rule was applied; and it would be not easily reconciled with the language in *Hinton* v. *Kennedy, supra,* that " the *onus* is on the appellant to show from the facts in evidence that there is no reasonable doubt of the error alleged." The rule itself, however, stands; and to obtain a reversal of the concurrent findings of fact by referee and Circuit judge it will be necessary to convince this court that such findings are without evidence to sustain them, or are manifestly against the weight of the evidence.

2. Where the evidence is taken in open court in the presence of the presiding judge without a referee or jury, his conclusions therefrom stand upon as strong ground, as they do under the

head last above discussed.  It does not appear that any of the cases now under consideration involved direct testimony upon the facts found ; the conclusions seem to have been inferentially drawn from the testimony.   In *Burris* v. *Whitner*, 3 *S. C.* 510, the findings of fact were sustained, there being "no clear proof to contradict his conclusions."   They were also sustained in *Mayer* v. *Blease*, 4 *S. C.* 10, the court saying they "must stand unless shown to be so entirely erroneous as to justify our interference by impressions from the evidence altogether contrary to his own."   The same result was reached in *Means* v. *Feaster*, *Id.* 249, where it is said : "If there was evidence sufficient to warrant the judgment of the court below on the facts, we should not overrule it, even if a close and careful examination might lead us to believe that the weight was the other way."   In *Lucken* v. *Wichman*, 5 *S. C.* 411, the appeal was dismissed. Moses, C. J., in delivering the opinion of the court, says: "Where a decree resting alone on facts is sought to be reversed, the contestant must show that it is clearly erroneous.   The obligation thus imposed upon him is necessarily a light one, for if the error is clear, there will be no difficulty in exposing it."   In *Daniels* v. *Moses, ante* 138, it is recognized as the "established rule of this court to accept the conclusion of the Circuit judge where there is any evidence to sustain it.   And in *Glenn* v. *Shannon, ante* 570, it is ruled that a finding of fact by a referee in an equity cause tried before him is conclusive, unless without evidence to sustain it, or manifestly against the overbearing weight of the evidence ; and the appeal was dismissed.   In reversing the Circuit decree in *Sullivan* v. *Thomas*, 3 *S. C.* 531, a case heard, it would appear, partly on written and partly on oral testimony, this court say that their conclusion was reached "not upon doubtful proof, but by a clear and overwhelming mass of testimony met by no contradiction such as the nature of the testimony demanded."   This is said as to one only of the questions of fact involved, but the same reasoning is applied to the others, and clear error is pointed out.   *Featherston* v. *Norris*, 7 *S. C.* 472, simply determines the legal bearing of the facts found to be different from that given to them by the Circuit judge.   And in *Shaw* v. *Cunningham*, 9 *S. C.* 271, the facts are not stated.   The case was remanded to the Circuit Court to have a question of fact passed upon by a jury, this court not being willing to over-

rule the judgment of the court below, but "not satisfied of the sufficiency of the evidence adduced to support his conclusion."

3. Where the conclusions of the Circuit judge are drawn from written testimony submitted to him, unaided by the findings of a referee, or the verdict of a jury upon issues ordered, the rule is substantially the same. Such appears to be the case of *Livingston* v. *Wells*, 8 *S. C.* 347, in which Willard, A. J., draws no distinction between cases heard primarily by the Circuit judge upon oral or written testimony, and cases heard upon·exceptions to a referee's report. In sustaining the facts as found, he thus speaks, (*p.* 356): "In order to set aside the conclusions of the Circuit Court as to the force and effect of evidence upon an appeal in cases of equitable cognizance, it is necessary to show that such conclusions are inconsistent with or unsupported by the clear force of the evidence from which they are drawn. * * * It must appear that the conclusions of the Circuit Court are clearly wrong. * * * The presumptions in favor of the ·correctness of the Circuit decree must be completely rebutted on considerations arising from the evidence, if it appears that there was contradictory testimony, in order to reconcile which the· character and position of the witnesses must be considered as presenting a question of credibility. * * * If it appears that conclusions of fact inferentially drawn from the testimony enter into the determinations as to matters of fact, the appellate court usually leaves these conclusions undisturbed, unless found to be inconsistent with inferences that are regarded by the court as irresistibly arising from such evidence. In a word, the clear result of undisputed testimony must·point to a conclusion different from that which the Circuit Court has drawn from it, before it will be disturbed on appeal." This seems to be quite as strong language as that which is to be found in the cases above considered. In *State, ex rel. Cathcart,* v. *Columbia, ante* 371, a finding of fact by the Circuit Court against the appellants upon whom lay the· burden of proof was sustained, there being no overbearing testimony to the contrary. *Fraser* v. *Davie,* 11 *S. C.* 56, was heard almost wholly on testimony in writing. This ·court overrules the Circuit judge, because a contrary conclusion rested on clear and indisputable grounds. They hold his finding erroneous "as unsupported by the proper legal effect of the proofs and allegations." And in overruling him upon another

point they say : "the testimony is so clear and conclusive, that it does not need comment or illustration."

4. Where the Circuit judge reverses the findings of fact by a referee, a different principle governs.  Five cases of this class may be found in the current series of reports, viz. : *Dewitt* v. *Atkinson*, 6 *S. C.* 140 ; *Perry* v. *Sullivan Man. Co.*, *Id.* 310 ; *Roach* v. *Ivey*, 7 *S. C.* 434 ; *Hughey* v. *Eichelberger*, 11 *S. C.* 36 ; *Thorpe* v. *Thorpe*, *ante* 154.  The case of *Pool* v. *Dial*, 10 *S. C.* 440, has reference only to the powers of a Circuit judge over the referee's report.  *Dewitt* v. *Atkinson* is the leading case under this head.  While, as stated in the subsequent case of *Thorpe* v. *Thorpe*, the Circuit judge must in every equity case reach and state his own conclusions of fact, nevertheless where such conclusions are derived wholly from testimony submitted to him in writing, and they are different from those drawn by the referee from that same testimony taken by him in person, the Circuit judge's opportunities of discovering error in the referee's findings of fact, are the same as those afforded this court, and the rules laid down under the three preceding heads of this note do not apply.  This court will fully examine the testimony in such cases, and will sustain referee or Circuit judge according to the impressions thence derived.  This is the doctrine of *Dewitt* v. *Atkinson*.  In all of these cases, except *Thorpe* v. *Thorpe*, the referee was sustained and the Circuit decree reversed.  But in each one of them, the judgment reached was the result of an examination of the testimony, to the same extent as were the conclusions of the Circuit Court.

Six cases only have been passed over, and they need to be separately considered, as it cannot be determined under what head they should fall.  *Leaphart* v. *Leaphart*, 1 *S. C.* 199, was referred to the commissioner in equity to ascertain and report ; but his findings are not stated, and, in the opinion of this court, allusion is made to a witness who was examined before the Chancellor. The appellants, regarding the testimony as unsatisfactory and conflicting, asked this court to order an issue to be tried by a jury, but it was refused, and the Circuit decree was confirmed.  In *Williams* v. *Beard*, 1 *S. C.* 309, and in *Womack* v. *Austin*, *Id.* 421, it does not appear how the testimony was taken, but the conclusion of the Circuit judge was confirmed, there being "no overbearing weight of evidence against it."  In *Smith & Gibson* v.

*Pate*, 3 *S. C.* 204, it cannot be certainly said how the evidence was taken. The decision of the Circuit judge in favor of plaintiffs was reversed, and an issue upon the main point of fact was ordered by the Supreme Court to be submitted to a jury, because of the "absence of all proof" to sustain it. Upon the certified verdict of the jury resolving the issues in favor of the defendant, this court dismissed the action. In *Anderson* v. *Earle*, 9 *S. C.* 460, we are not informed how the case was heard, what the decision of the Circuit judge was, or whether this court agreed or disagreed with him. In *Arnold* v. *House*, the principal case, to which this note is appended, questions of fact found by the referee were confirmed in part by the Circuit judge and in part reversed, and both classes were brought here on appeal. The opinion of the court does not enable us to say which were approved and which were deemed immaterial, nor to which their remarks applied. From this review of cases of equitable cognizance, we find—

1. That in all cases of appeal from findings of fact by a Circuit judge, confirming the same findings by a referee, or deduced from testimony taken orally before the judge, or from evidence submitted to him in writing for his original findings, the burden is upon the appellant to show clear error in the Circuit decree, by reason of an entire absence of evidence to support it, or because opposed to the manifest weight of testimony in the cause. But where, in the judgment of this court, there is such clear error, the Circuit decree will be reversed.

2. In cases of difference of opinion between the judge and a referee upon the facts, this court will examine the Circuit decree, and either adopt or reject it, as the facts may appear to warrant, to the same extent as a Circuit judge passes upon the report of a referee.

It is believed that every case contained in the twelve volumes of the new series of South Carolina Reports, in which this court has been called upon to review questions of fact determined in the courts below, will be found under its proper head in this note. It will be observed that the Supreme Court have, as yet, laid down no rule governing its review of findings of fact by a Court of Probate; nor has it yet been determined whether a different rule would be applied to cases coming up from the Court of Probate, exercising the powers heretofore belonging to

Ordinaries, from the rule which should govern cases arising in that court under the enlarged jurisdiction conferred upon it by the constitution of 1868, and which, before that time, were within the exclusive jurisdiction of the Court of Equity.

REPORTER.]