7080

MILLER v. WROTON.

1. DEED—FRAUD—EQUITABLE MORTGAGE.—The testimony here tends to show that the husband some years since, when he began business, in consideration of a sum of money advanced him by his wife, made a verbal agreement with her that a tract of land which he expected to inherit and to which he afterward made her an absolute deed, should stand as security for the sum advanced, thereby creating an

7—82

equitable mortgage on the land. Deed set aside as a fraud upon creditors, but case remanded with permission to the wife to set up her equitable mortgage.

MESSRS. JUSTICES JONES and WOODS *think there was no evidence tending to support an equitable mortgage.*

2. STATUTE OF FRAUDS—WAIVER.—The right to interpose the objection that an equitable lien on land in parol is obnoxious to the statute of frauds is personal to the party and may be waived.

3. FRAUD—NOTICE.—Simple contract creditors and lien creditors whose judgments were recovered after record of deed are not subsequent creditors against a deed, executed since on a parol contract made before the amendment to section 2456 of Code of Laws in 1898, and before the debts, of which contract such creditors had no notice.

MESSRS JUSTICES JONES and WOODS *think this principle does not avail against trustee in bankruptcy.*

4. FRAUD—PRINCIPAL AND AGENT.—Where a husband acts as agent of the wife in executing to her a deed when he knew he was then insolvent and which he did with intent to hinder, delay and defraud his creditors, the deed is fraudulent as to the creditors, notwithstanding the wife did not know of his condition or intention.

5. HOMESTEAD.—REHEARING refused. Where the claim of homestead is not made in the pleadings this Court cannot adjudicate anything in reference thereto.

Before GAGE, J., Orangeburg, May, 1907.   Reversed.

Action by Joseph H. Miller, trustee in bankruptcy of Charles L. Wroton, against Charles L. Wroton, Alice Alston Wroton *et al.* From Circuit decree, plaintiff appeals.

*Messrs. Wm. J. Cherry* and *Glazer & Herbert,* for appellant. *Mr. Cherry* cites: *No consideration arising from children, and their part of deed void:* 69 S. C., 373. *Fraud may be inferred from facts and circumstances:* 52 S. C., 479; 57 S. C., 110; 14 Ency., 492, 497, 498; 26 N. Y., 241; 14 Ency., 290; 2 Pom. Eq. Jur., 600; McM. Eq., 27; 32 S. C., 171; Bump. Fr. Con., secs. 42-67, 600; 39 S. C., 118. *Verbal agreement is within statute of frauds:* 138 U. S., 587; 30 Ill., 63; 21 S. C., 480; 27 S. C., 363,

621; 94 Mo., 637; 3 Pars. on Con., 368. *Verbal agreement could not stand against creditors:* 29 Ency., 1098; 22 How., 41; 11 Rich. Eq., 132; 36 S. C., 343; 14 Ency., 430; 2 Pom. Eq. Jur., 821. *Burden is on grantee to show consideration and no notice of grantor's fraud:* 14 Ency., 299, 490; 1 Hill, 16; 1 Hill, ch. 293; Bump. Fr. Con., sec. 265; 5 L. R. A. (N. S.), 395.

*Messrs. C. E. Spencer, W. M. Dunlap* and *Raysor & Summers,* contra. *Messrs. Raysor & Summers* cite: *All insolvent debtors may prefer one creditor, under statute of Elizabeth:* 27 S. C., 285; 42 S. C., 475; 14 Ency., 226; 13 Ency., 224; 8 Ency., 856; Bump. on Fr. Con., 219; 36 S. C., 154; 64 S. C., 365; 54 S. C., 472. *What inadequacy of price will avoid a contract:* 20 Cyc., 521; 21 S. C., 261; 57 S. C., 280; 100 Va., 638; 83 Fed. R., 234; 9 A.m. R., 676; 61 Am. Dec., 375; Bump. on Fr. Con., 237, 232; 24 Rich Eq., 114. *Contract was taken out of statute of frauds by execution of the deed:* 55 S. C., 195; 28 S. C., 193; 20 Cyc., 306. *Such objection is personal to the debtor:* 20 Cyc., 307; 45 Am. Dec., 590; 20 Ohio, 206; 30 Ohio, 191; 11 Nev., 227. *Husband was not agent of wife in executing the deed:* 69 S. C., 23; 50 S. C., 259; 68 Am. St. R., 446; 57 S. C., 29. *Wife is not estopped because she knew nothing of husband's insolvency:* 37 S. C., 507; 49 S. C., 69; 16 Cyc., 730, 733; 25 Conn., 118; 75 Am. St. R., 454; 42 S. C., 351; Big. on Est., 434.

December 9, 1908. The opinion of the Court was delivered by

MR. JUSTICE GARY. The case was referred to Robert E. Copes, as special referee, who made the following report:

"This action is brought under Sections 2369, 2372, Code of 1902, Vol. I, for the purpose of having the deed set forth in the complaint and executed by the defendant,

Charles L. Wroton, to his co-defendants, adjudged fraudulent and void, as against the plaintiff and the creditors of the said Charles L. Wroton.

"The defendants, Charles L. Wroton and Alice Alston Wroton, by their answers, allege, substantially, that the deed in question was upon good consideration and *bona fide,* and they ask that the complaint be dismissed.

"The other defendants are infants, and file their answer through their duly appointed guardian *ad litem.*

"From the evidence taken in the cause, I find

"As matter of fact:

"During the fall of 1893, and spring of 1894, the defendant, Charles L. Wroton, for the sum of thirteen hundred dollars, then advanced him by his wife, the defendant, Alice A. Wroton, promised her, verbally, that, when he came into it, he would give her and their children the real estate which would come to him from his mother's estate.

"On December 15, 1900, the said Charles L. Wroton, who had met with business reverses and failures, and who had become indebted to numerous creditors, owing them in the aggregate a large and considerable sum of money, by his deed of that date, and being the deed in question, conveyed the real estate which came to him from his mother's estate to his co-defendants, his wife, and their children.

"The said Charles L. Wroton was rendered totally insolvent by the execution of said deed; and he executed same only after certain of his creditors had been pressing him vigorously for payment, and with the intent to hinder, delay and defraud his creditors.

"The said Alice A. Wroton knew nothing of this insolvency, and in no way participated in the fraudulent purpose of the said Charles L. Wroton, but accepted said deed in good faith, and in the fulfilment of said promise.

"As matter of law:

"Having found that the transactions of Alice A. Wroton relative to said deed were *bona fide,* and were

based on a promise made to her years before by the said Charles L. Wroton, for money which she actually advanced, I recommend that the complaint be dismissed."

Upon hearing the plaintiff's exceptions to the report, it was confirmed by the Circuit Court, and the plaintiff has appealed to this Court.

The first question that will be considered is, whether there was error in finding that the deed executed by Charles L. Wroton, whereby he conveyed to the defendants the land described in the complaint, was made in pursuance of an agreement entered into between Charles L. Wroton and his wife in 1893 or 1894.

Charles L. Wroton testified in behalf of the plaintiff, as follows: "Q. Mr. Wroton, the consideration named in this deed is $1,476. Will you please state to the Court how that was paid? A. Well, it was paid from my wife to me; it was paid by my wife. My wife paid that money. Sent it from Rock Hill. Q. Was it paid at the time this deed was executed? A. Not at that time. It was paid previously. Q. Well, state the circumstances as to how it was paid? A. Well, when I went into business—when I went to go into business—when I was in Denmark, I had no money. I had been cashier at the bank. The salary I was earning was not a large one, and it took all the salary I was making to live on. When I left the bank I did not have enough money to use as capital, and my wife offered to lend me this money. I told her I had nothing to secure her with at the present time, but in all human probability I would eventually come into possession of this Orangeburg property; that was my mother's property, my mother's estate; and I told her whenever I got that property 'I am willing to give you that property, so that you and the children, if anything happens to me, shall have something to fall back on,' and that was the bargain and understanding when that was done."

When recalled for the defendants, he testified as fol-
lows: "Q. Referring to the money that you got from
your wife, will you please state what agreement, if any,
you and wife had concerning money and concerning
land? A. I had been cashier of the bank at Denmark, and
gave up that position, as I desired to go into business.
When I got ready to go into business I had no funds to
start on, and my wife volunteered to lend me some money
to start business on, in the neighborhood of $1,900. I
told her I did not have anything to secure her for this
money, except that I would be entitled to some land when
my mother died, at least, when my father died, because
my father was in possession of the land, and I could not
feel that I had any moral right to try to dispossess him
of the land. I borrowed this money from my wife and I
agreed to give her this farm, when I came into possession
of it. She let me have it on that basis."

Mrs. Alice Alston Wroton testified as follows. in be-
half of the defendants: "Q. What did your husband tell
you when you let him have the money? A. He said sev-
eral times that he expected to give me that property for
that money. Not only one time, either. He said it more
than one time. Q. When did he say it in reference to get-
ting the money? You said he said it more than one time.
A. He told me that from time to time. Q. When was the
first time he ever mentioned it to you? A. It was long
years ago; not recently. Q. Was it about the time he got
the money? A. Yes, sir; it was when we were in the low
country. Q. Just tell the referee again what your hus-
band told you when you let him have that money? A.
He said he was going to· turn that place over to me and my
children. It was not his at the time."

Again she testified as follows: "Q. Did you consider
that a loan to your husband, or just a gift? A. I just let
him have it, but he told me that it was what he would do.
Q. You let him have it without regard to· what he would

do? A. Of course, I gave it to him free and willingly, but he told me he was going to give me that for it. Q. That was after you gave him the money? A. I don't know. I don't think it is necessary for you to ask me these questions. You know as well as I do. I think I have given the facts, and I think that is all that is necessary. Q. Well, you don't know whether he told you he would give you this property afterwards or previous to getting the money? A. No, I don't know. Q. You can't fix the date when he told you that? A. No, I don't remember dates, at all; don't try to remember."

This testimony, together with other facts and circumstances, satisfies us that there was not an agreement between Charles L. Wroton and his wife in 1893 or 1894, whereby he obligated himself to convey the land in fee to his wife and children, but there was testimony tending to show that, in consideration of the sums of money advanced to him by her, there was at that time a verbal agreement to the effect that the land should stand as security for the sums advanced, thereby creating an equitable mortgage on the land.

The plaintiff's attorneys contend that even if there was such an agreement, it was within the statute of frauds. The right to interpose this objection is personal to the party who agrees that the land shall be encumbered, *Finley* v. *Moore*, 55 S. C., 195; and the testimony tended to show that Charles L. Wroton waived the right to insist upon this objection.

The testimony tends to show either that the plaintiffs were only simple contract creditors, or that if any of them were lien creditors, their judgments were recovered after they had notice of the recorded deed. As the agreement was entered into between C. L. Wroton and his wife, prior to the amendment to section 2456 of the Code of Laws, in 1898, it did not affect said agreement. Under these circumstances the plaintiffs

would not be in a position to claim that they were subsequent creditors for valuable consideration without notice.

The next question that will be considered is, whether there was error in finding that the deed was not fraudulent and void as to the wife and children. The special referee and his Honor, the Circuit Judge, both find that 4    Charles L. Wroton executed the deed with intent to hinder, delay and defraud his creditors. None of the grantees were present when the deed was executed in the office of the grantor, who sent it to the proper office to be recorded, after which it was returned to him and locked in his safe.

Mrs. Alice Alston Wroton testified as follows as to the agency of her husband: "Q. Mr. Wroton managed that entire transaction? A. Charley Lang manages affairs of that kind. I just know he will do it all right. I have perfect confidence in him in that way."

In his decree the Circuit Judge says: "Some wives act independently of their husbands, but most of them act through the agency of their husbands, even though the transaction be between themselves. Mr. Wroton so acted in the case at bar."

It thus clearly appears that Charles L. Wroton was the agent of his wife in the tranaction resulting in the execution of the deed; and, as there was fraud on his part, she will not be allowed to enjoy the benefits arising therefrom. Notice to him under these circumstances will be imputed to her, and renders the deed null and void. *Blackwell* v. *Mortgage Co.*, 65 S. C., 105, 43 S. E., 395.

Both the special referee and his Honor, the Circuit Judge, find as matter of fact that there was no intention on the part of Mrs. Wroton to defraud the creditors of her husband.

If, therefore, it should be established as a fact that there was an agreement between Charles L. Wroton and his wife, whereby an equitable mortgage was created on

the land, she would be entitled to assert her rights under said agreement even though the deed be set aside for fraud. *Smith* v. *Stubbs,* 3 S. C., 204; *Arnold* v. *House,* 12 S. C., 600; *Brown* v. *Newell,* 64 S. C., 27, 40 S. E., 1032.

As this Court has reached the conclusion that the deed was null and void for fraud, Mrs. Wroton should be remitted to her rights under the said agreement, and the questions arising thereunder as to whether the agreement created an equitable mortgage which is ·now enforceable, should be determined when the case is remanded to the Circuit Court.

It is the judgment of this Court that the judgment of the Circuit Court be reversed, and that the case be remanded to the Circuit Court for the purpose of determining all questions relative to the alleged agreement entered into between C. L. Wroton and his wife in 1893 or 1894.

MR. JUSTICE WOODS, *dissenting.* I concur in the opinion of Mr. Justice Gary that the deed from Charles L. Wroton to his wife, Alice A. Wroton, was fraudulent and should be set aside. The further holding, however, that there was testimony tending to show that Wroton and his wife made an agreement that she should have a claim or lien on the land, constituting an equitable mortgage, it seems clear to me, has no foundation in either the pleadings or the evidence.

The action was brought by the trustee in bankruptcy of Wroton to set aside, as a fraud on creditors, a deed made by him to his wife and children on 15th December, 1890. The defendants, Wroton and Mrs. Wroton, in their answer deny the fraud and rely entirely on the validity of the deed as a conveyance of the land. On the trial of the issue of fraud or good faith Wroton and his wife, in support of the deed, testified fully as to the consideration. Their testimony, quoted at length in the

opinion of Mr. Justice Gary, is not to the effect that Wroton would give his wife a claim or lien on the land to secure her for money loaned; but, on the contrary, that, as he had no security to give, when the title came to him, Wroton would make to Mrs. Wroton and their children an absolute deed to the land, in consideration of the money received from her. That this was what they intended to set up and testify to, as the contract between them is made still clearer by the fact that when Wroton undertook to carry out the alleged agreement he made an absolute deed of conveyance to the land. The Court should not decree an equitable lien or mortgage on the land, nor remand the case for inquiry on that subject when there is nothing in the pleadings or evidence to sustain it. When, therefore, the deed is declared fraudulent and void the claim of Mrs. Wroton and her children is at an end.

But the result would be the same, even if the defendants had set up in answers and proved that there was a verbal agreement between them, in 1893 or 1894, that Mrs. Wroton should have a lien or charge on the land for the payment of the money loaned to Wroton. There is no evidence whatever that the trustee in bankruptcy, or any of the creditors of Wroton, had notice of such verbal agreement prior to the commencement of this action by the trustee for the benefit of creditors. It is true, there is testimony that the verbal agreement was made in 1893 or 1894, before the amendment to the recording act, in 1898, giving to creditors and purchasers without liens protection against unrecorded liens and conveyances; and the creditors had not reduced their claims to judgment at the time the petition in bankruptcy was filed. But it is settled, a trustee in bankruptcy is "so far a judgment creditor as to have a proper standing to reach equities beyond the domain of legal remedies." Brandenburg on Bankruptcy, sec. 1084; *Barker* v. *Barker*, 2 Fed. Cas., 807; *Southard* v. *Benner*,

78 N. Y., 434; *In re Mentzser,* 17 Fed. Cas., 231; *In re Duncan,* 8 Fed. Cas., 1. Neither the trustee nor the creditors having any notice of the verbal agreement, and the trustee being regarded as a judgment creditor, the case of *King* v. *Fraser,* 23 S. C., 543, holding that, prior to the amendment of 1898 of the recording act, creditors without liens were not entitled to the protection of that act has no application. Therefore, even if there had been such a verbal agreement for a lien, it could not avail against the trustee.

There is certainly no sanction in reason, and we think none can be found in authority, for holding that a secret verbal agreement to make a mortgage will stand as against subsequent creditors without notice; whereas, if the agreement had been carried into effect, and a mortgage actually made and kept off the record, it would fall. In *Herring* v. *Cannon,* 21 S. C., 212, 219, the Court has used this explicit language in declaring such a lien cannot stand against subsequent creditors and purchasers: "Upon the whole, considering the time and occasion of the passage of the act of 1845, the state of the law, then recently announced in the case of *Bennett* v. *Sims,* and the policy of our law as to registry, as well as its express terms and the adjudications under it, we must conclude that it was intended to embrace such conditional sales as the one in this case, and in that way to cut up, root and branch, *all secret liens,* whether written or verbal, in respect to the rights of subsequent creditors and purchasers for valuable consideration without notice."

The fraudulent deed cannot be valid to the extent of the money paid by Mrs. Wroton under the alleged verbal agreement, because such agreement, as we have seen, was never a lien on the land. This fact, that it was not a lien, distinguishes this case from *Smith* v. *Pate,* 3 S. C., 204; *Arnold* v. *House,* 12 S. C., 600; and *Brown* v. *Newell,* 64 S. C., 27, 40 S. E., 1032. In

the first of these cases a judgment had been taken for the full amount of the value of the property sold, estimated in Confederate money, instead of the real value of the property in good money. The judgment debtor was guilty of fraud, but the creditor was not, and the Court allowed the judgment to stand for the real sum due. In *Arnold* v. *House* a valid and *bona fide* judgment, while it was still in force, had been fraudulently renewed for more than was due, and the judgment was held valid to the extent of the amount due on the original judgment; the Court saying: "It does not follow that an improper use of a valid security destroys the proper right under the security itself. The defect must exist in the security, which is impaired by the fraudulent purpose or intent entering into the elements of the contract." The same rule was applied in *Brown* v. *Newell,* where a valid and *bona fide* mortgage had entered into a fraudulent mortgage. From this statement it is manifest these cases afford no authority for allowing this fraudulent deed to be set up as an equitable mortgage, for to do so would be to give effect to a verbal agreement to defeat a subsequent judgment creditor without notice.

For these reasons I think the judgment of the Court should be reversed; that the deed from Charles L. Wroton to his wife, Alice A. Wroton, Alice A. Wroton, Jr., Constance L. Wroton, and Butler A. Wroton, should be set aside as fraudulent and the cause remanded to the Circuit Court; that the tract of land described in the complaint may be subjected to the payment of the debts of Charles L. Wroton, and for such other proceedings as may be necessary in the premises.

MR. JUSTICE JONES *concurs in judgment of reversal, as proposed in the opinion of* MR. JUSTICE WOODS, *for reasons therein stated.*

January 18, 1909.  PER CURIAM.  The defendant, Alice A. Wroton, by a petition for rehearing has asked this Court to adjudge that Charles L. Wroton is entitled to a homestead in the premises in dispute, that Charles L. Wroton is estopped from denying the validity of his deed; and that, therefore, his deed to her was effective to carry to her his homestead right.  The question of homestead was not made by the pleadings, and this Court could not decide anything on that subject as to the rights of Charles L. Wroton or of Mrs. Alice A. Wroton or of the creditors.

The petition for rehearing is, therefore, refused and the order staying the remittitur is revoked.