## McDOWELL v. RUSSELL.

WILLS—LIMITATION OF ESTATES.—Under the will here in question, testator's daughter took two distinct and different interests, one in remainder in fee simple in certain lands and personal property, after falling in of life estate of her mother, and the other a direct interest in slaves, with limitation over to her brothers and sisters, in case she died without having issue or raising a child to maturity.

Before GAGE, J., Kershaw, May, 1901.    Affirmed.

Action by Allison A. McDowell against Wm. F. Russell, Elizabeth Young *et al.* From Circuit decree in favor of plaintiff, defendant appeals. The will in question here is as follows:

"I Archibald McDowell, being weak and low in body but in sound and perfect mind memory and understanding, do make publish and declare this to be and contain my last will and testament hereby revoking disallowing and disannuling all wills and testaments by me made and executed and declare this to be and contain my last will and testament.

"My worldly estate after payment and satisfaction of all my just debts and funeral expenses I give and bequeath to my wife Mary McDowell during her natural life that part of my plantation on which I live containing two hundred and fifty acres more or less plantation tools household and

kitchen furniture one wagon and carriage all my stock of every description and one years provision also seven negroes Stephen Rose Ben Sam Tempy Rebecca and Tubly together with their increase also the interest on all bonds and notes not otherwise disposed of at my death at her death the plantation and tools household and kitchen furniture one wagon and carriage two mules two cows and calves one sow and pigs to return to my daughter Martha, I give and bequeath to her during her natural life four negroes Mary Nancy Cloey and George together with their increase it being her full part of my estate and if she should have no issue or raise no child to maturity then her property to return to her brothers and sisters I give and bequeath to my daughter Nancy two negroes Cloey and Sally together with their increase during her natural life and at her death to return to her children I give and bequeath to my daughter Alethea two hundred acres of land of more or less on which she lives also four negroes Judy Charles Wesley and Mugs together with their increase during her natural life and at her death to return to her children I, give and bequeath to my daughter Jane one negro woman Phely together with her increase during her natural life and if she should have no issue or raise no child to maturity then her property to return to her brother and sisters I give and bequeath to my son James one negro man Henry I give and bequeath to my son Archibald one negro man Moses I, give and bequeath to my son Allison one negro man Rubin, I give and bequeath to my daughter Elizabeth the price of one negro man Captain though subject to the demand my son James may hold against her I desire my grand-sons Columbus and James McDowell draw their fathers part in this last division and if they should die having no lawful issue then their property to return to their uncles and aunts and in the last place I appoint my sons James and Allison my executors furthermore I appoint them trusteees for my wife that they see the property I leave her rightly managed and the proceeds be applied to her benefit and at her death the negroes be divided or sold that each get an equal

share agreeable to an estimate attached to this instrument in witness I have hereunto subscribed my name and affixed my seal this 20th day of December and in the year of our Lord one thousand eight hundred and fifty-five.   (Signed) J. T. Cauthen, J. S. Fletcher, James L. Owens.   (Signed) Archibald McDowell, L. s.   Elizabeth Stradford, $1,400.00; William McDowell, $1,200.00; James McDowell, $1,660.00; Archibald McDowell, $1,220.00; Allison McDowell, $1,635.00; Nancy Johnson, $1,650.00; Alethea Russell, $1,300.00; Jane Kelley, $1,300.00."

"The above is copied from records of ordinary—original lost."

The following is the Circuit decree:

"This cause comes before me upon exceptions, by both sides, to the master's report.   The action was brought to recover the possession of 250 acres of land now occupied by the defendant, Wm. F. Russell.   The other parties, defendants, are joined to adjudge any probable title they may have under the will of Archibald McDowell, and all parties claim under his will.

"This action involves a construction of that instrument, so far as it relates to the land in issue.   The master found that Martha McDowell took in remainder, 'a vested transmissible interest, subject to being divested by the failure of Martha to leave issue or raise a child to maturity.'   He further found that Martha's 'brothers and sisters had then [at Mary's death] a contingent remainder which was not transmissible.' He further found that at Martha's death, 'the only surviving members of the class brothers and sisters being the plaintiff, he takes the land in fee simple.'   The master then found title in the plaintiff, and against the claims of all the defendants. In her lifetime Martha McDowell conveyed by deed the land in controversy to her brother, the plaintiff.   And the plaintiff contends that his title from that source is one in fee simple.   That was the ground of plaintiff's exception to the master's report.

"The defendants contend that the brothers and sisters of Martha took a transmissible interest in the land; that the limitations of the will to the brothers and sisters of Martha was to them as individuals, transmissible to their heirs at law, and upon the death of Martha without issue, devisable among the legal representatives of Martha's deceased brothers and sisters and her brother, the plaintiff; that the limitations of the will to deceased brothers and sisters constitute an executory devise and not a contingent remainder; that the testator intended his grand-sons, Columbus and James, to have an estate in the land. For convenience I have made a rough draft of the will and attached it hereto. The language is that of the will, the paragraphing is my own, as also the underlinings, and the words and clauses in brackets. A critical examination of the entire instrument makes it manifest that twelve distinct bequests are made therein. In logical order, the first issue presented is the right construction of a clause which occurs in the third paragraph, to wit: 'And if (Marth) should have no issue, or raise no child to maturity, then (the land) to return to her brothers and sisters.' If it be true that the land in controversy is subject to the limitation quoted, then who took? the three brothers and four sisters of Martha and her two nephews, Columbus and James, who were all living when the will became operative, or that the brother, the plaintiff, who was living at Martha's death? There are two contingent events created by the will, and only two, to wit: (1) No issue to Martha, and (2) No child of hers raised to maturity. She had no issue, and, therefore, no child raised to maturity. The will created two estates, quickened at the same time and deposited in the beneficiaries at the same time, to wit: the first in Martha, possible to be terminated, the second in ascertained brothers and sisters of Martha, possible to be terminated; issue or a matured child to Martha would terminate the second; no issue to Martha would terminate the first. Therefore, the brothers and sisters of Martha living at the testator's death, took living transmissible interests, now in them or their heirs at law.

The fact that the plaintiff was the only individual at Martha's death who answered the description of brother or sister, does not constitute him sole devisee, because the will did not make such survivorship a contingency.   But under the limitation quoted above, the grand-sons, Columbus and James, could not take; first, because they did not answer the description, and second, because paragraph eleven of the will excludes the idea.   The last division therein referred to is that made in paragraph twelve.

"It yet remains to consider is the land in controversy subject to the aforesaid limitation?   My own opinion is the limitation has no reference to the land.   The first paragraph of the will makes a bequest to the wife Mary for her natural life, of the land and certain personal property therein named. The second paragraph makes a bequest to Martha in remainder, in this language: 'At (Mary's) death the plantation and tools household and kitchen furniture two mules two cows and calves one sow and pigs to return to my daughter Martha.'   It is admitted on all hands that the language employed carries an absolute estate to Martha.   The bequest did not include very much of the personalty thereinbefore given to Mary for her life, to wit: 'All my stock of every description * * * seven negroes (by name) and their increase,' etc.   Final description of that property was made without limitation, in the twelfth paragraph of the will, of which paragraph the 'estimate' is a part.   Martha is expressly excluded from the benefits of that paragraph.   The third paragraph is a *direct* bequest of other property to Martha, limited expressly to her natural life, and over on failure of issue.   The limitation over is of 'her property.' Those words do not necessarily mean all her property.   The same words are used in the sixth paragraph, to describe what property of Jane's is limited.   They do not, however, embrace the other property bequeathed to Jane in the twelfth paragraph of the will.   The only language in the will not in harmony with the view, that the limitation referred to was not used about the land, is that found in the third paragraph,

to wit: 'It being her full part of my estate.' A grammatical construction of the sentence of which the quoted clause is a part, would make 'it' refer to the bequest of the negroes Nanny, Nancy, Cloey and George; and that accords with my view. But the property bequeathed in paragraph three was not the 'full part' which Martha took under the will. I, however, incline to the opinion that the language above quoted was used, more especially, to denote the testator's desire that Martha should not participate in the enjoyment of that part of the personalty limited by way of remainder in the twelfth paragraph of the will, and estimated by the testator to be worth more than $10,000.

"My opinion, therefore, is, that the plaintiff herein, as the grantee of his sister, Martha, is the sole and absolute owner of the land described in the complaint, and is entitled to judgment for the possession thereof; and it is so ordered. The report of the master is modified to conform to the views herein expressed. The plaintiff is entitled to any further order which may be necessary to secure to him the right determined."

Draft of will by Circuit Judge:
"I give and bequeath—
"First. To my wife, Mary, during her natural life, etc.
"Second. At her death the plantation and tools, household and kitchen furniture, one wagon and carriage, two mules, two cows and calves, one sow and pigs, to return to my daughter, Martha.
"Third. I give and bequeath to *her* during *her natural life* four negroes (naming), together with their increase, *it being her full part of my estate;* and if she should have no issue or raise no child to maturity, then *her property* to return to her brothers and sisters.
"Fourth. I give and bequeath to my daughter Mary two negroes (naming), together with their increase *during her natural life* and at her death to return to her children.
"Fifth. I give and bequeath to my daughter Alethea 200

acres, also four negroes (naming), with increase, during *her natural life,* and at her death to return to her children.

"Sixth. I give and bequeath to my daughter Jane one negro woman, Phaly, with increase, during her *natural life,* and if she should have no issue or raise no child to maturity, then *her property* to return to her brothers and sisters.

"Seventh. Bequest to son James.

"Eighth. Bequest to son Archibald.

"Ninth. Bequest to son Allison.

"Tenth. Bequest to daughter Elizabeth.

"Eleventh. I desire my grand-sons, Columbus and James McDowell (sons of W. D. McD.), draw their father's part in this last division; and if they should die having no lawful issue, then *their property* to return to their uncles and aunts.

"Twelfth. And in the last place (appointing executors and trustees for wife), and at her death the negroes be divided or sold, that each one get an equal share agreeable to an estimate attached to this instrument. In witness, etc."

*Messrs. Kirkland & Moore,* for appellants, cite: *As to who takes under the limitation over:* 1 Jar. Wills (Perk. ed.), 661; 2 Strob. Eq., 51; Tied. on Real Prop., 415; 44 S. C., 503; 59 S. C., 4; 10 Rich. Eq., 394.

*Messrs. W. D. Trantham* and *J. T. Hay,* contra, cite: *As to who takes under the limitation over:* 10 S. C., 403; 23 S. C., 224; 37 S. C., 268.

March 7, 1902. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This action was brought to recover possession of certain real estate (250 acres of land on which the testator, Archibald McDowell, resided) and certain personal property mentioned in the complaint. The plaintiff claims title to said property under the will of his father, Archibald McDowell, and under a deed from his sister, Martha McDowell, conveying to him in fee simple the

said land.   The defendants, who are the grand-children of
the said Archibald McDowell, claim that the said property
was devised and bequeathed to the said Martha for her life
only, and in the event of her death without issue, or should
she fail to raise a child to maturity, then the same should go
to her brothers and  sisters,  and the  children of deceased
brothers and sisters.   The will bears date the 20th of De-
cember, 1855, and the facts as found by the master, to whom
all the issues of law and fact were referred, are as follows :
that the testator died some time during the year 1860; that
he had nine children, two of whom predeceased him—his
daughter, Emma Kelly, who died leaving no issue, never
having been married, and his son, W. D. McDowell, who
died leaving two sons, Columbus and James McDowell ; that
at the death of the testator, his widow went into possession
of the land described in the complaint under the terms of her
deceased husband's will and remained in possession until her
death, in the year 1870; that upon the death of the said
Mary, the daughter of the testator, Martha, went into pos-
session of the same and remained in possession until her
death, on the 15th December, 1899; that on the 22d of Janu-
ary, 1898, the said Martha conveyed the said land to the
plaintiff in fee; and that the said Martha died leaving no
issue, never having been married.

The questions presented by this appeal turn upon the pro-
per construction of the will of Archibald McDowell, and as
that instrument is very  inartistically  drawn, without any
punctuation marks whatever, except two commas, it will be
necessary that an exact copy thereof, as set out in the "Case,"
should be incorporated by the Reporter in his report of the
case.   The Circuit Judge in his decree, as set out in the
"Case" (which should likewise be incorporated in the report
of this case, including the draft of the will as made by him
and appended to his decree), held that the limitation over to
the brothers and sisters of the said Martha McDowell does
not embrace the land in controversy, and that she took an
absolute estate therein, which, by her conveyance to the plain-

tiff, vested the title in him; and he, therefore, rendered judgment that the plaintiff do recover possession of the same.

From this judgment defendants appeal upon two grounds, which practically present the single question whether the land was included in the limitation over. The plaintiff, according to the proper practice, also gave notice that if this Court should be unable to sustain the conclusion reached by the Circuit Judge, upon the ground on which he rested his conclusions, that he would ask this Court to sustain the judgment below upon the following additional ground, to wit: That if the land should be regarded as embraced in the limitation over, the remainder was to the brothers and sisters of Martha *as a class,* and that the plaintiff being the only member of that class *in esse,* at the death of Martha without issue, was entitled to the entire interest in the property in question. It must be admitted that the question as to the proper construction of this will, which is, practically, in a single sentence and almost wholly destitute of any punctuation marks, is one of no little difficulty. But after a careful study of the language of this most informal paper, we are inclined to adopt the view taken by the Circuit Judge. Without undertaking to separate this paper into separate paragraphs or clauses, we will proceed to state what we understand, from the language used by the testator, to have been his intentions in regard to the disposition of his property. It seems that the testator had two tracts of land, one containing 250 acres on which he resided, and the other containing 200 acres on which his daughter lived, and twenty-one negroes, besides various other kinds of personal property, including bonds and notes, which he disposed of as follows: 1st. To his wife, Mary, he gave during her natural life the 250 acres of land (here in controversy), his plantation tools, household and kitchen furniture, one wagon and carriage, all of his stock of every description and one year's provisions, also seven negroes (designating them by name), also the interest on all bonds and notes not disposed of during his life, and then uses this language: "At her death (the death of his wife)

3—63

the plantation and tools, household and kitchen furniture, one wagon and carriage two mules two cows and calves one sow and pigs to return to my daughter Martha, I give and bequeath to her (his daughter Martha) during her natural life four negroes (designating them by name) together with their increase it being her full part of my estate and if she should have no issue or raise no child to maturity then her property to return to her brothers and sisters." 2d. To his daughter, Nancy, he gave two negroes, designating them by name, "during her natural life and at her death to return to her children." 3d. To his daughter, Alethea, he gave 200 acres of land "on which she lives" and also four negroes, designating them by name, "during her natural life and at her death to return to her children." 4th. To his daughter, Jane, he gave one negro woman "during her natural life and if she should have no issue or raise no child to maturity then her property to return to her brothers and sisters." 5th. To his son, James, he gave one negro man, naming him. 6th. To his son, Archibald, he gave one negro man, naming him. 7th. To his son, Allison, he gave one negro man, naming him. 8th. To his daughter, Elizabeth, he gave the price of one negro man, Captain, though subject to the demand of his son, James, against her. 9th. He directs that his grandsons, Columbus and James McDowell, shall "draw their father's part in this last division and if they should die having no lawful issue then their property to return to their uncles and aunts." 10th. He appoints his sons, James and Allison, his executors and also trustees for his wife, "and at her death the negroes be divided or sold that each get an equal share agreeable to an estimate attached to this instrument." This paper, called an "estimate," which is appended to the will, contains a list of all his children, including Wm. McDowell, who had predeceased the testator, leaving two sons, Columbus and James; but not including his daughter, Emma, who died during the lifetime of the testator leaving no issue, and not including his daughter, the said Martha McDowell.

It will be observed that in every instance where the testator gives property to any one, either expressly or by implication for life, with remainder to others, he expresses such intention by the words that such property upon the death of the first taken is *"to return to"* the persons intended to take in remainder, which language, though not technically accurate, is often used by ignorant persons not skilled in drawing such papers as a will or deed.    It will also be noticed that *all* of the property given to the wife expressly for life, is not limited over to any one, though the seven negroes given to her for life is by the last clause of the will limited over to his children named in the paper styled "an estimate," but not including his daughter, Martha, nor his predeceased daughter, Emma Kelly, with a special provision that his two grand-sons, Columbus and James, shall represent their predeceased father, William McDowell, "in this last division," to wit : the division of the seven negroes or the proceeds of their sale, which the testator had given to his wife for life, and "the plantation and tools household and kitchen furniture one wagon and carriage two mules and two cows and calves one sow and pigs" are limited over to the testator's daughter, Martha, without any further limitation.    Then follows another bequest to his daughter, Martha, expressly for her life, of four negroes, which is limited over to her brothers and sisters, in case she dies leaving no issue or "should raise no child to maturity."    This language shows that while the testator did intend to give to his daughter, Martha, the four negroes named in this part of the will, with a limitation over to her brothers and sisters in case she died without issue, or failed to raise a child to maturity, he did not intend that the other devise and bequest of the land and personal property therein mentioned should be limited over to any one.    For, in the first place, the devise and bequest of the "plantation and tools household and kitchen furniture" and the other articles of personal property therein named was in remainder after the termination of the wife's life estate, and was *not* to his daughter, Martha, for her life, but

was simply to his daughter, Martha, which in a will would be quite sufficient to create in her an absolute estate in fee; while in the other bequest, the four negroes therein named were given to her directly, without the intervention of any precedent life estate in the wife; and in the second place, they were given to her expressly for life, with a limitation over to her brothers and sisters, in case she died leaving no issue or "failed to raise a child to maturity;" and in the third place, the testator when he disposed of the remainder in the seven negroes given to his wife for life excluded his daughter, Martha, from any participation in the division of such remainder.     It is contended that some of the language used in this portion of the will, providing for a limitation over to the brothers and sisters of Martha, in case she died without issue or without having raised a child to maturity, is inconsistent with the view which we have adopted.     We, therefore, quote here the whole of the language of that portion of the will which creates the bequest of the four negroes to Martha, followed immediately by the language which it is claimed creates the limitation over in favor of the brothers and sisters of Martha, as to *all* of the interests which she took under the will: "I give and bequeath to her (manifestly referring to Martha) during her natural life four negroes Mary Nancy Cloey and George together with their increase it being her full part of my estate and if she should have no issue or raise no child to maturity then her property to return to her brothers and sisters."     The words thus relied upon are first: "it being her full part of my estate," according to grammatical construction the word "it" manifestly relates to what has just preceded, to wit: the four negroes with their increase, and it would be an overstrained construction to make the word "it" relate not only to the direct bequest of the four negroes, but also to the preceding devise and bequest of the plantation and the personal property therein mentioned, after the death of the testator's wife.     But it is said the further words "being her full part of my estate"—if confined to the life estate of Martha in the four negroes—would be incon-

sistent with the fact, as that could not be her share of the whole of the testator's estate.    In the first place, the testator does not say that this was her *equal share* of his estate, but his language is "her *full* part of my estate."    And as the testator was not obliged to give her an *equal* share of his estate, but might give her any portion thereof that he thought proper, the words "full part" may very well be construed to mean all that "I intend to give her."    "I give her this in full of her part of my estate;" and, as matter of fact, that was all that he did give her directly, for the only other provision for her was her interest in remainder of a portion of the property given to the wife for her life, of which she might never have had the enjoyment—as, for instance, if she had died before her mother.

But there is another view of this matter.    The testator, in penning this clause, manifestly had in view the disposition of his *negro property,* which seems to have been the most valuable portion of his estate, and the words relied upon may well be regarded as referring only to that species of property; and this view is strengthened by the fact that the testator, in the latter part of his will, in providing for the disposition of the remainder after the termination of the life estate of his wife in the seven negroes given to her for life, excluded his daughter, Martha, from any participation therein.    Next, it is contended that the words "her property" meant all the interest Martha took under the will, and hence the limitations over covered the property given to Martha in remainder, after the termination of the wife's life estate, as well as the four negroes given to her directly by this clause of the will. But the words "her property" may well be construed as relating only to the property which she took under this clause of the will, for the reasons above indicated, as well as for the further reason that, when the will took effect, her interest in expectancy by way of remainder after the termination of her mother's life estate, would not likely be spoken of by a layman as "her property," inasmuch as she was not then and

might never be entitled to the use and enjoyment of such property as her own.

We are of opinion, therefore, that Martha McDowell took, under the will of her father, two distinct and different interests—one in remainder, embracing the property here in controversy after the termination of her mother's life estate, which was not encumbered with any limitation over, and the other a direct interest in the four negroes mentioned, which was encumbered with a limitation over to her brothers and sisters, in case she died without issue, or without raising a child to maturity.

Under this view, the question presented by the additional ground upon which this Court is asked to affirm the judgment below, becomes speculative merely and need not, therefore, be considered.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.